**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 23, 2013**

# In the Court of Appeals of Georgia

A13A1025. CARTER v. RIGGINS et al.

ANDREWS, Presiding Judge.

David Carter sued Lorenzo Riggins and Rosa Hester alleging that, while he was an invitee at a restaurant they owned and operated, he was physically attacked and injured by two of Hester's sons, one of whom was working at the restaurant. Carter asserted two causes of action: (1) that in violation of OCGA § 51-3-1 Hester and Riggins failed to exercise ordinary care to keep him safe from the attack on the restaurant premises; and (2) that under the principle of respondeat superior they were liable for the actions of Hester's son employed at the restaurant. Carter appeals from the trial court's grant of summary judgment in favor of Riggins and Hester. For the following reasons, we affirm.

To prevail on a motion for summary judgment, "the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Viewing the record in this light, we find that the trial court correctly granted summary judgment in favor of Riggins and Hester.

Prior to the alleged attack, Carter had engaged in a romantic relationship with Hester, who he believed was divorced. In fact, Hester was married with five children, including a son in high school and an adult son. Carter went to have lunch at the restaurant owned and operated by Riggins and Hester. Hester was not there at the time, but Riggins was present running the restaurant, and Hester's high school-aged son was there working at the restaurant. There was evidence that Riggins and both of Hester's sons were aware of Hester's romantic relationship with Carter. The high school son testified that the relationship between his mother and Carter made him feel "like crap" and that, when he saw Carter at the restaurant, he wanted Carter to leave and told Riggins to tell Carter to leave. Riggins said that he had never heard the son speak about Carter, and did not even know if he knew Carter. Nevertheless, after Carter arrived at the restaurant, Riggins saw that the high school son had a strange or

2

angry look on his face which made Riggins feel like "something was going to happen." Because Riggins "didn't like the look" on the son's face, he thought that the son might be angry because he knew about his mother's relationship with Carter. Riggins testified that he called Carter up to the cash register to warn him and told Carter that he thought "something may happen" or "I feel like something is going to happen."

Carter testified that, during his relationship with Hester, she introduced him to her high school son, that the son knew about their relationship, and that he saw no indication that the son had any animosity toward him because of the relationship. Carter had never met Hester's adult son. Carter testified that, when he arrived at the restaurant, he saw Hester's high school son, that he spoke to him, and that the son "nodded like hey or whatever." Carter saw the high school son leave the restaurant, then 10 or 15 minutes later walk back in with another man he did not know (later identified as Hester's adult son), then a few minutes later leave the restaurant with the man. After the high school son left the restaurant with his adult brother, Carter said that Riggins called him up to the counter and told him that he thought Hester's two sons "are about to jump on you." Carter asked, "For what?" and Riggins said, "I don't know, but I am telling you." Carter then asked, "Well, where are they at?" and

3

Riggins told him they were outside. Carter testified that "at that point . . . I wanted to find out what they were mad about, you know, if they had intentions to physically jump me or whatever." So Carter said that he started to dial Hester's phone number and that, "as I dial her number, I hear the [restaurant] door open behind me, and at that very instant . . . I turn around and [Hester's sons] are charging at me." According to Carter, Hester's sons punched and kicked him for about 90 seconds and then ran out of the restaurant. There was no evidence of any prior altercation, dispute, or animosity between Carter and Hester's sons. There was no evidence of prior physical attacks, altercations, or disputes of any kind at the restaurant.

1. Under OCGA § 51-3-1, a business proprietor has a duty to exercise ordinary care to keep the premises safe for invitees. This is not a case where a business proprietor had a duty to exercise ordinary care to protect an invitee from a physical attack which was foreseeable to the proprietor because there was a history of prior similar attacks on the premises. See *Days Inn of America, Inc. v. Matt*, 265 Ga. 235 (454 SE2d 507) (1995). The evidence shows that the alleged attack on Carter arose out of personal animosity that Hester's sons had for Carter as a result of Carter's relationship with their mother. Carter does not claim that Riggins or Hester are liable for failing to intervene after the 90-second attack commenced. Rather, Carter claims

4

that Riggins and Hester are liable because they should have reasonably foreseen the attack and exercised ordinary care to prevent it.

Under OCGA § 51-3-1, when a business proprietor should reasonably apprehend that an invitee on the premises is in danger of being injured by the misconduct of another person on the premises, the proprietor has a duty to exercise ordinary care to protect the invitee from injury caused by the misconduct. *Shockley v. Zayre of Atlanta*, 118 Ga. App. 672, 673 (165 SE2d 179) (1968).

> When the conduct of persons on the premises is such that the proprietor from known facts or circumstances should reasonably apprehend danger to other customers, it is his duty to interfere to prevent injury, and the failure to interfere when the proprietor has an opportunity to foresee and prevent injury may constitute negligence. . . . [But] [n]o matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something that it should not have done, or failed to do something it should have done pursuant to the duty owed the plaintiff. The owner is not the insurer of the safety of guests.

Id. at 673-674; *Adler's Package Shop, Inc. v. Parker*, 190 Ga. App. 68, 69-70 (378 SE2d 323) (1989).

The only evidence purporting to show that the restaurant proprietors in this case should have foreseen and prevented the physical attack on Carter was Riggins's testimony that, after Carter arrived at the restaurant, he saw a "strange" or "angry" expression on the high school son's face, and that the son told Riggins to tell Carter

5

to leave. Riggins did not know if the son knew about Carter's relationship with his mother, but he speculated that was what the son could be angry about. Evidence shows that the high school son left the restaurant, returned 10 or 15 minutes later accompanied by his adult brother, and that a few minutes later both sons left the premises. At that point, Riggins warned Carter about what he had seen, and told him that the two sons might attack him and that they were somewhere outside the restaurant. Carter immediately attempted to call Hester and, as he was doing so, Hester's two sons burst into the restaurant and attacked him.

We find no basis on which a reasonable trier of fact could find that Riggins or Hester negligently failed to foresee and prevent the attack, or otherwise failed to exercise ordinary care to keep the premises safe. Hester was not present at the restaurant prior to or during the attack, and there is no evidence that she had any prior knowledge about the attack. What Riggins knew provided reason for him to suspect that the two sons might attack Carter – a possibility that Riggins then warned Carter about, even though the two sons had already left the restaurant. There is no evidence that Riggins knew the two sons planned to return to the restaurant. Shortly after Riggins warned Carter, the two sons burst into the restaurant and immediately attacked him. On this record, no reasonable trier of fact could find that Riggins or

6

Hester "did something that [they] should not have done, or failed to do something [they] should have done pursuant to the duty owed [Carter]." *Shockley*, 118 Ga. App. at 674. We find as a matter of law that Riggins and Hester could not have reasonably foreseen or prevented the attack on Carter, and that the trial court correctly granted summary judgment against Carter on his cause of action based on OCGA § 51-3-1.

2. Likewise, there is no basis for Carter's cause of action asserting that, because Hester's high school-aged son was employed by the restaurant, Riggins and Hester were vicariously liable for the attack on the basis of respondeat superior.

Pursuant to the principle of respondeat superior, an employer is liable for negligent or intentional torts committed by an employee in furtherance of and within the scope of the employer's business. *Piedmont Hosp., Inc. v. Palladino*, 276 Ga. 612, 613 (580 SE2d 215) (2003). But the employer is not liable under respondeat superior for an employee's tort committed "not in furtherance of the employer's business, but rather for *purely personal reasons* disconnected from the [employer's] authorized business. . . ." Id. at 613-614. (emphasis in original; punctuation and citation omitted). Because Carter was physically attacked by Hester's sons for purely personal reasons entirely disconnected from the restaurant's business, Riggins and Hester cannot be held liable for the attack on the basis of respondeat superior. *Travis Pruitt*

*& Assoc., P.C. v. Hooper*, 277 Ga. App. 1, 3 (625 SE2d 445) (2005); *Piedmont Hosp.*, 276 Ga. at 614.

*Judgment affirmed. Dillard and McMillian, JJ., concur.*