**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BARNES, P.J. and RAY, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 24, 2018**

# In the Court of Appeals of Georgia

A18A1379, A18A1380. DUVALL et al. v. CRONIC et al.; and vice versa.

MCFADDEN, Presiding Judge.

These cross-appeals arise from a dispute between two sets of parties that each claim to have been the victims of the fraudulent or deceitful actions of Kerrie Bundy. Jon Wiley Cronic, who is the president of K & J Co., Inc., alleges that Bundy convinced him to enter into a business venture, incorporate K & J in connection with that venture, and provide her the use of a luxury vehicle — an Audi — that Bundy then purportedly sold, without authorization, to Duvall Ford Company. Jeffrey H. Duvall, who is the president of Duvall Ford, alleges that Bundy, on behalf of K & J, engaged in a series of fraudulent vehicle transactions with Duvall Ford including the purported sale of the Audi.

After Duvall and Duvall Ford foreclosed on the Audi pursuant to the Abandoned Motor Vehicle Act, OCGA § 40-11-5, and then sold the vehicle to a third party, Cronic and K & J brought an action against them for conversion; as part of that action, Cronic and K & J sought to set aside the order authorizing the foreclosure (hereinafter, "the foreclosure order"). In response, Duvall and Duvall Ford brought counterclaims against Cronic and K & J for vicarious liability and civil RICO violations related to Bundy's acts. (Bundy, who was convicted of theft by deception and incarcerated, is not a party to these civil actions.)

The cross-appeals address four rulings, which, as detailed below, we resolve as follows. (1) We affirm the trial court's order to set aside, as to Cronic and K & J, an order foreclosing a lien on the Audi in favor of Duvall Ford, which Duvall and Duvall Ford obtained pursuant to the Abandoned Motor Vehicle Act, OCGA § 40-11-5. (Both sets of parties challenge aspects of this ruling in Cases No. A18A1379 and A18A1380.) (2) We affirm the trial court's grant of summary judgment to Cronic and K & J on their claim for conversion. (Duvall and Duvall Ford challenge this ruling in Case No. A18A1379.) (3) We reverse the trial court's denial of summary judgment to Cronic on Duvall and Duvall Ford's counterclaim for vicarious liability, but we

affirm that ruling as to K & J. (Cronic and K & J challenge this ruling in Case No. A18A1380.) (4) Likewise, we reverse the trial court's denial of summary judgment to Cronic on Duvall and Duvall Ford's counterclaim for RICO, but we affirm that ruling as to K & J. (Cronic and K & J challenge this ruling in Case No. A18A1380.) In summary, we affirm the rulings at issue in Case No. A18A1379 and affirm in part and reverse in part the rulings at issue in Case No. A18A1380.

1. *Set-aside ruling.*

We first address the merits of Duvall and Duvall Ford's appeal of the trial court's order setting aside the foreclosure order on the Audi, because our resolution of that issue affects our analysis of the summary judgment rulings. Because our analysis of the set-aside ruling rests primarily on procedural considerations rather than the specific facts of this case, we defer an in-depth discussion of the facts to Division 2, infra, which addresses the summary judgment rulings.

As part of their action for conversion of the Audi, Cronic and K & J asked the trial court to set aside the previously entered foreclosure order, which had established a lien on the vehicle in favor of Duvall Ford, foreclosed on the vehicle, and authorized Duvall Ford to sell it. The trial court had entered the foreclosure order

3

pursuant to the Abandoned Motor Vehicle Act, which provides for the creation of a lien in favor of a person who removes or stores an abandoned vehicle, OCGA § 40-11-4 (a), after Duvall, on Duvall Ford's behalf, filed with the court an affidavit in which he averred, among other things, that the Audi had become abandoned after being left at Duvall Ford for repair, that the Audi's owners had not redeemed the vehicle despite being notified of their right to do so, and that the Audi's owners had not satisfied a demand for payment of fees and costs from Duvall Ford. See generally OCGA § 40-11-5 (3) (requiring party foreclosing upon lien on abandoned vehicle to make affidavit to court containing specific averments).

On Cronic and K & J's motion, the trial court subsequently set aside the foreclosure as to both of them on the ground that the court lacked personal jurisdiction over the proceeding because Cronic had not been properly served with the notice required for foreclosure of a lien under the Abandoned Motor Vehicle Act. See OCGA § 9-11-60 (d) (1) (judgment may be set aside for lack of personal jurisdiction). Despite the urging of Cronic and K & J, however, the trial court expressly declined to set aside the foreclosure order as to another entity, Audi Financial Services, which held a lien on the Audi. Both sets of parties challenge this

4

ruling, which we review for abuse of discretion. See *Stamey v. Policemen's Pension Fund Bd. of Trustees*, 289 Ga. 503, 504 (1) (712 SE2d 825) (2011).

(a) *Grant of set-aside motion (Case No. A18A1379).*

The Abandoned Motor Vehicles Act requires, among other things, that the person seeking to foreclose first make a written demand upon an abandoned vehicle's owner for certain fees and costs associated with removing or storing the vehicle. OCGA § 40-11-5 (2). The written demand must "notify the owner of his or her right to a judicial hearing to determine the validity of the lien," and it must be made "by certified or registered mail or statutory overnight delivery[.]" Id. As the lien claimant, Duvall Ford was required to strictly comply with these procedures. See *Horner v. Robinson*, 299 Ga. App. 327, 329 (2) (682 SE2d 578) (2009); *Transworld Financial Corp. v. Coastal Tire & Container Repair*, 298 Ga. App. 286, 290 (2) (680 SE2d 143) (2009).

Perhaps it did. But even if the notice Duvall Ford provided was sufficient under the statute, it was insufficient under the Due Process Clause.

Duvall, on behalf of Duvall Ford, sent a written demand to Cronic and K & J by way of certified mail. But although it appears undisputed that Duvall knew

5

Cronic's office address, he did not send it there or to Cronic's home address, Instead he sent it to fraudster Bundy's home address. The demand was returned marked "Return to Sender/Not Deliverable as Addressed/Unable to Forward." And Cronic averred in an affidavit that he received no notice of the foreclosure proceeding.

Duvall and Duvall Ford argue that this was sufficient notice under the Abandoned Motor Vehicle Act because they obtained Bundy's address"from official records." As to Cronic, it appears that the records to which Duvall and Duvall Ford refer are the Audi's insurance card and a printout on the vehicle from the Tax Commissioner. And Bundy's home address was also the "principal office address" listed for K & J with the Secretary of State.

Based on this evidence, and the lack of any evidence that Cronic had "received and ignored notices that the [written demand] was waiting for him," the trial court concluded that the notice that Duvall and Duvall Ford sent to Cronic "was not reasonably calculated, under all the circumstances, to apprise [Cronic] of the pendency of the [foreclosure proceeding] and afford [him] an opportunity to present [his] objections." (Citation and punctuation omitted.) For this reason, the trial court held that the notice to Cronic was constitutionally deficient and that, as a result, the

court that issued the foreclosure order lacked personal jurisdiction over Cronic and the order must be set aside under OCGA § 9-11-60 (d) (1).

Pretermitting whether, under these circumstances, the use of the address listed on those documents to serve Cronic with notice satisfied the Abandoned Motor Vehicle Act's requirements, the notice must also satisfy constitutional due process requirements. See *Mitsubishi Motors Credit of America v. Robinson & Stephens, Inc.*, 263 Ga. App. 168, 170-171 (1) (587 SE2d 146) (2003) (requiring written demand in abandoned vehicle foreclosure proceeding to meet due process requirements for notice). To satisfy those requirements, the notice must be "reasonably calculated, under all circumstances, to enable the interested parties to protect their rights." *Green Tree Servicing v. Jones*, 333 Ga. App. 184, 189 (2) (775 SE2d 714) (2015) (citation and punctuation omitted). "Where a judgment is entered in contravention of a party's due process rights to notice, a trial court is authorized to set the judgment aside under OCGA § 9-11-60 (d)." *Crenshaw v. Crenshaw*, 267 Ga. 20, 21 (2) (471 SE2d 845) (1996) (plurality opinion) (citing *Johnson v. Mayor & City Council of the City of Carrollton*, 249 Ga. 173, 175-176 (288 SE2d 565) (1982)).

So the trial court did not err in setting aside the foreclosure order on the ground that the notice given by Duvall and Duvall Ford was not reasonably calculated to enable Cronic to protect his rights. The trial court's ruling was authorized by our decision in *Mitsubishi Motors Credit of America v. Robinson & Stephens, Inc.*, supra. In *Mitsubishi Motors*, as in this case, notice of a foreclosure proceeding under the Abandoned Motor Vehicle Act was sent to an incorrect address, albeit an address that appeared in official records. 263 Ga. App. at 169-170. And as in this case, the owner of the vehicle in *Mitsubishi Motors* did not actually receive the notice. Id. at 170. Faced with that evidence, we reasoned in *Mitsubishi Motors* that "[m]ailing a legal notice to the wrong address provides no notice and may violate due process" and held that a trial court under such circumstances was authorized to set aside the judgment. Id. at 170-171 (1).

There is even more evidence in this case supporting the trial court's conclusion that the notice provided by Duvall and Duvall Ford was not reasonably calculated to enable Cronic to protect his rights. Duvall and Duvall Ford knew that the notice had been returned to them marked "undeliverable," indicating that the post office had been unable to deliver it to Cronic. There was no evidence that the written demand

8

was returned because Cronic had refused or failed to accept service of it. Compare *Tate v. Hughes*, 255 Ga. App. 511, 512-513 (565 SE2d 853) (2002) (trial court erred in holding that defendant's failure to receive actual notice of lawsuit invalidated service, where evidence showed she received notices from post office that certified mail was waiting for her) with *Stone v. Sinkfield*, 70 Ga. App. 787, 790 (29 SE2d 310) (1944) (trial court erred in denying motion to dismiss action for want of proper service where there was no evidence that defendants knew of presence of registered letters at post office but refused or failed to call for them). So, "[a]lthough [Duvall and Duvall Ford] may have made a reasonable calculation of how to reach [Cronic, they] had good reason to suspect when the notice was returned that [Cronic] was no better off than if the notice had never been sent." *Jones v. Flowers*, 547 U. S. 220, 230 (II) (A) (126 SCt 1708, 164 LE2d 415) (2006) (citation and punctuation omitted). Cf. *Kennedy v. Mississippi Dept. of Revenue*, 529 B. R. 345, 352 (II) (3) (Bankr. N.D. Ga. 2015) (citing *Jones v. Flowers*, supra, for proposition that attempt to give notice was reasonably calculated to apprise intended recipient of hearing "[s]o long as [the sender] was *unaware* that its attempt to give notice had gone awry") (other citation omitted; emphasis added). Moreover, when the written demand was returned as

9

"undeliverable," Duvall knew of another address where he could try to reach Cronic — Cronic's office. Under these circumstances, "[d]eciding to take no further action is not what someone desirous of actually informing [the intended recipient] would do; such a person would take further reasonable steps if any were available." *Jones*, 547 U. S. at 230 (II) (A) (punctuation omitted).

We also find that the trial court, having set aside the foreclosure order as to Cronic, did not err in also setting it aside as to the other defendant in the foreclosure proceeding, K & J, because that judgment was indivisible in that it concerned the disposal of a single vehicle. See *Martin v. Six Flags Over Georgia II, L. P.*, 301 Ga. 323, 338 (III) (801 SE2d 24) (2017) ("Where a judgment is entire and indivisible, it can not be affirmed in part and reversed in part, but the whole must be set aside if there is reversible error therein.") (citations and punctuation omitted).

Given our conclusion that the trial court was authorized to set aside the foreclosure order for lack of personal jurisdiction, we do not reach the parties' other arguments pertaining to the propriety of the set-aside order.

(b) *Challenge to set-aside ruling on behalf of nonparty (Case No. A18A1380).*

Cronic and K & J argue that, because the foreclosure order was indivisible, the trial court also should have set it aside as to nonparty lienholder Audi Financial Services. But Cronic and K & J lack standing to appeal from the trial court's refusal to do so, because they have not shown that they were aggrieved by the trial court's exception of Audi Financial Services from the set-aside order. See *Cooper Motor Lines v. B. C. Truck Lines*, 215 Ga. 195 (1) (109 SE2d 689) (1959); *Flanigan v. RBC Bank (USA)*, 309 Ga. App. 499, 500-501 (711 SE2d 63) (2011).

2. *Summary judgment rulings.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies are] entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "We review a grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmovants and drawing every reasonable inference in their favor." *Patterson v. Kevon, LLC*, 304 Ga. 232, 236 (__ SE2d __) (2018) (citation omitted).

As stated above, these cross-appeals challenge the trial court's grant of partial summary judgment to Cronic and K & J on their conversion claim and denial of

11

summary judgment to them on the vicarious liability and RICO counterclaims brought by Duvall and Duvall Ford. Because Cronic and K & J were the moving parties in all of these instances (and because Duvall and Duvall Ford did not enumerate as error the trial court's implicit denial of their own motion for partial summary judgment), we construe the evidence in the light most favorable to Duvall and Duvall Ford.

So construed, the evidence showed that Cronic is the owner of an insurance business. In the fall of 2011 Bundy, who was a friend of Cronic's adult son, approached Cronic with a proposal for an internet car sales business known as "Kerrie's Prices" that would connect prospective car buyers with dealers offering the lowest-possible price quote on the car. Bundy would operate the business, doing "all the work," and Cronic would have "no involvement whatsoever in the management or operation of the car business."

Together, Cronic and Bundy incorporated K & J. The documents filed with the Secretary of State listed Bundy as the corporation's registered agent and Bundy's home as the address of the corporation's principal office. At Bundy's urging, Cronic bought two new luxury vehicles for them to use in connection with the business;

these vehicles — both Audis — were jointly owned by Cronic and K & J and he and Bundy each drove one.

In June 2012, Bundy engaged in a series of vehicle transactions with Duvall Ford. On June 4, 2012, Bundy, on behalf of "K And J Company," bought a 2009 Chevrolet Tahoe from Duvall Ford; she paid Duvall Ford for this vehicle with a bad check. On June 7, 2012, a customer of Bundy's bought a 2012 Chevrolet Tahoe from Duvall Ford; Bundy made a partial payment for this vehicle to Duvall Ford with a bad check. On June 11, 2012, Bundy purportedly sold Duvall Ford one of the two Audis jointly owed by Cronic and K & J; the dispute before us arises primarily from this transaction. Finally, Bundy bought a 2012 Ford F-250 from Duvall Ford; she paid for this vehicle with a check written on the "Kerrie's Prices" bank account, which had been closed. Bundy purported to be acting on behalf of K & J in all of these transactions.

Regarding the Audi, Bundy told Duvall Ford that it was subject to an outstanding loan of $3,762.87 to Audi Financial Services. Duvall Ford wrote a check to Audi Financial Service in that amount and wrote two checks to Bundy totaling more than $35,000. In fact, the Audi was subject to a much higher outstanding loan.

13

Bundy had fraudulently procured the lower payoff amount from Audi Financial Services by writing Audi Financial Services a bad check for $53,000 that had not yet cleared when Bundy purported to sell the Audi to Duvall Ford.

By June 14, Duvall had discovered Bundy's deception and he confronted Cronic about it at Cronic's office. According to Duvall, during this confrontation Cronic stated that he had "told Bundy that she should keep [the Audi and] that he and Bundy had bought two [Audis] and that [Audi] was Bundy's." Cronic disputes Duvall's version of the confrontation. In any event, Cronic reported the Audi as stolen to the police, he tried several times to recover the vehicle from Duvall Ford, and in August 2011 he had an attorney write Duvall Ford a letter demanding the return of the vehicle.

Duvall Ford did not return the Audi to Cronic. Instead, in December 2012, Duvall initiated a foreclosure proceeding upon the Audi under the Abandoned Motor Vehicle Act. As described above, Duvall filed an affidavit with the trial court averring, among other things, that the Audi had been left with Duvall Ford for repairs and subsequently abandoned by its owners. After obtaining the (now-set-aside) foreclosure order, on February 15, 2013 Duvall Ford sold the Audi.

Bundy was convicted of and incarcerated for the theft by deception of $31,637.13 from Duvall Ford.

(a) *Conversion (Case No. A18A1379).*

The trial court granted partial summary judgment to Cronic and K & J on their claim against Duvall and Duvall Ford for conversion of the Audi. Duvall and Duvall Ford challenge that ruling. We find no error.

As plaintiffs, Cronic and K & J had the burden of showing that Duvall and Duvall Ford engaged in a "distinct act of dominion wrongfully asserted over [their] property in denial of [their] right, or inconsistent with it[.]" *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987) (citation and punctuation omitted). See also *Rebel Auction Co. v. Citizens Bank*, 343 Ga. App. 81, 86 (2) (805 SE2d 913) (2017); *Trey Inman & Assoc. v. Bank of America, N. A.*, 306 Ga. App. 451, 457 (4) (702 SE2d 711) (2010). They also had to rebut any defense raised by Duvall and Duvall Ford. See *100 Lakeside Trail Trust v. Bank of America, N. A.*, 342 Ga. App. 762, 763 (804 SE2d 719) (2017).

It is undisputed that Cronic and K & J jointly owned the Audi before Bundy purported to sell it to Duvall Ford. It is also undisputed that Duvall and Duvall Ford

15

did not return the Audi to Cronic and K & J but instead initiated proceedings to foreclose upon it. And it is undisputed that Duvall Ford ultimately sold the vehicle to a third party. These were acts of dominion in denial of or inconsistent with Cronic and K & J's ownership rights in the Audi.

Duvall and Duvall Ford assert two defenses to the conversion claim. They argue that the foreclosure order authorized them to foreclose upon and sell the Audi under the Abandoned Motor Vehicle Act. And they argue that a question of fact exists as to whether Cronic and K & J still owned the Audi when Duvall and Duvall Ford engaged in the acts of dominion over it. But they have not shown a genuine issue of material fact as to either defense.

(i) *The foreclosure order provides no defense to conversion.*

As explained above, the trial court properly set aside the foreclosure order for lack of personal jurisdiction. See Division 1 (a), supra. So the foreclosure order was void. *Johnson v. Mayor & City Council of the City of Carrollton*, supra, 249 Ga. at 175 (2); *Mitsubishi Motors Credit of America v. Sheridan*, 286 Ga. App. 791, 794 (1) (650 SE2d 357) (2007). As a void order, the foreclosure order placed Duvall and Duvall Ford "in no better position than [they] occupied before; it [gave them] no new

16

right[.]" *Mitsubishi Motors*, 286 Ga. App. at 793 (1) (citations omitted). In other words, the foreclosure order did not create a lien in Duvall Ford's favor. And there is no "good faith" defense to a conversion claim. See *Maryland Cas. Ins. Co.*, 257 Ga. at 261 (1). Because Duvall Ford did not have a lien on the Audi, neither it nor Duvall had authority under the Abandoned Motor Vehicle Act to withhold the vehicle from Cronic and K & J or to foreclose upon and sell it. See *A Tow v. Williams*, 245 Ga. App. 661, 663 (538 SE2d 542) (2000); *Horner v. Robinson*, 299 Ga. App. 327, 330 (2) (682 SE2d 578) (2009).

(ii) *There is no genuine issue of fact regarding ownership of the Audi.*

To prevail on their conversion claim, Cronic and K & J must have owned the Audi at the time Duvall and Duvall Ford engaged in acts of dominion over it. See *Kornegay v. Thompson*, 157 Ga. App. 558, 559 (2) (278 SE2d 140) (1981). Duvall and Duvall Ford argue that a question of fact exists on this point, because there is evidence supporting a conclusion that Bundy, as an agent with apparent authority from Cronic and K & J, effected a valid sale of the vehicle to Duvall in June 2012. See generally *Johnson Street Properties v. Clure*, 302 Ga. 51, 55 (1) (a) (ii) (805 SE2d 60) (2017) (principal who knowingly causes or permits another to appear as his

17

agent is estopped from denying agency); *Griffith v. Nance*, 175 Ga. App. 59, 60-61 (1) (332 SE2d 358) (1985) (vehicle may be sold by purported agent with apparent authority).

But the argument that Bundy actually transferred ownership of the Audi to Duvall Ford in June 2012 is inconsistent with Duvall's sworn testimony, given in January 2013 on behalf of Duvall Ford in the foreclosure proceeding, that the Audi was an abandoned vehicle that had been left at Duvall Ford for repairs by its owner. The clear implication in Duvall's January 2013 sworn testimony is that Duvall Ford did *not* own the Audi. His testimony is fundamentally inconsistent with his argument that the evidence supports a finding that Bundy transferred ownership of the Audi to Duvall Ford. Duvall and Duvall Ford are bound by that testimony. See *Hudgens v. Broomberg*, 262 Ga. 271 (3) (416 SE2d 287) (1992) ("[t]estimony . . . is testimony" and is subject to the rule in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), even if given in a different proceeding).

(b) *Vicarious liability (Case No. A18A1380).*

In one of their counterclaims, Duvall and Duvall Ford sought to impose vicarious liability upon Cronic and K & J for the tortious actions of Bundy. Cronic

and K & J challenge the trial court's denial of their motion for summary judgment on that counterclaim. Cronic is entitled to summary judgment, but K & J is not. So we affirm in part and reverse in part this ruling.

(i) *Cronic.*

Georgia law provides that, " [e]very person shall be liable for torts committed by his . . . servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." OCGA § 51-2-2. This principle also applies to a principal-agent relationship, see *Prince v. Brickell*, 87 Ga. App. 697, 700 (2) (75 SE2d 288) (1953), and "[t]he relation of principal and agent arises whenever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1. There is no evidence supporting a finding that Bundy was Cronic's employee, or that Cronic authorized Bundy to act for him individually or subsequently ratified her actions on his own behalf, as opposed to acting for or on behalf of K & J. Consequently, Cronic was entitled to summary judgment on the vicarious liability claim and we reverse the trial court's denial of summary judgment to Cronic.

(ii) *K & J.*

While the nature of Bundy's official role with K & J is not clear from the record, it is undisputed that she was the person in charge of managing and conducting K & J's internet car sales business. For K & J to be vicariously liable for her tortious actions against Duvall Ford, however, Bundy must have been acting in furtherance of and within the scope of K & J's business. See *Chorey, Taylor & Feil, P. C. v. Clark*, 273 Ga. 143, 144 (539 SE2d 139) (2000). This usually is a question of fact, id., and the mere fact that Bundy's torts were intentional does not preclude a finding that she acted in furtherance of and within the scope of K & J's business. See OCGA § 51-2-2 (providing for vicarious liability for torts "committed by negligence or voluntarily"). See also *Piedmont Cotton Mills v. Gen. Warehouse No. Two*, 222 Ga. 164, 168 (2) (149 SE2d 72) (1966) ("A principal may be liable for the wilful tort of his agent, done in the prosecution and within the scope of his business, although it is not expressly shown that he either commanded the commission of the wilful act or assented to it.") (citations and punctuation omitted). Nevertheless, Georgia courts have found summary judgment appropriate for an employer whose employee committed a tort "for purely personal reasons entirely disconnected from [the

20

employer's] business." *Carter v. Riggins*, 323 Ga. App. 747, 750 (2) (748 SE2d 117) (2013) (citations and emphasis omitted) (restaurant employee physically attacked customer for personal reasons unrelated to restaurant); *Travis Pruitt & Assoc., P. C. v. Hooper*, 277 Ga. App. 1, 3 (1) (625 SE2d 445) (2005) (employee sexually harassed co-worker). Accord *Piedmont Hosp. v. Palladino*, 276 Ga. 612, 614 (580 SE2d 215) (2003) (hospital employee allegedly improperly manipulated patient's genitals). We cannot say, as a matter of law, that Bundy's tortious acts were entirely disconnected from K & J's business, as there is some evidence that she engaged in at least some of those acts within the context of the type of business transactions that constituted K & J's internet car sales business. The transaction involving the 2012 Chevrolet Tahoe, for example, involved Bundy facilitating a vehicle sale between Duvall Ford and a customer of Bundy's. So we affirm the trial court's denial of summary judgment to K & J on the vicarious liability claim.

(c) *RICO (Case No. A18A1380).*

In their other counterclaim, Duvall and Duvall Ford alleged that Cronic and K & J violated the Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act, OCGA § 16-14-1 et seq., which provides civil remedies for violations. OCGA

21

§ 16-14-6. Cronic and K & J challenge the trial court's denial of their motion for summary judgment on this counterclaim. Again, Cronic is entitled to summary judgment, but genuine issues of material facts preclude summary judgment to K & J. So we affirm in part and reverse in part this ruling.

(i) *Cronic*.

Under the RICO Act, "[i]t shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." OCGA § 16-14-4 (a). "A 'pattern of racketeering activity' means engaging in at least two predicate acts of racketeering activity." *Ali v. State of Ga.*, 328 Ga. App. 203, 206 (761 SE2d 601) (2014) (citations omitted); see OCGA § 16-14-3 (4) (A).

Duvall and Duvall Ford based their RICO claim on Bundy's various vehicle transactions with Duvall Ford, which they argue constituted the predicate act of theft by deception. See OCGA § 16-14-3 (5) (A) (xii). "A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." OCGA § 16-8-3 (a).

Cronic argues, and we agree, that there is no evidence that he obtained or attempted to obtain property from Duvall or Duvall Ford by deceitful means or artful practice with the intention of depriving them of that property. Instead,

> the uncontroverted evidence established without question that [Cronic] did not . . . participate in any of the transactions that form the basis of [the RICO] claim[ ]. All of the alleged acts were perpetrated by [Bundy], and [Duvall and Duvall Ford] have not presented any evidence that [Cronic] was involved with [Bundy's transactions with Duvall Ford].

*Summit Automotive Group v. Clark*, 298 Ga. App. 875, 881 (3) (681 SE2d 681) (2009).

We agree with Duvall and Duvall Ford that, contrary to an argument made by Cronic and K & J, an officer of a corporation may be in conspiracy with the corporation itself. *Williams Gen. Corp. v. Stone*, 280 Ga. 631, 631-633 (1) (632 SE2d 376) (2006) (reversing *Stone v. Williams Gen. Corp.*, 275 Ga. App. 33 (619 SE2d 752) (2005)).

But as discussed above, there is no evidence that Bundy was acting as an employee or agent for Cronic (as opposed to K & J). See Division 2 (b) (i), supra. And there is no evidence showing that Cronic was in a conspiracy with either K & J or Bundy, which could support a finding of a RICO violation under OCGA § 16-14-4

23

(c) (1) (prohibiting person from conspiring with one or more persons to engage in pattern of racketeering behavior in violation of RICO Act). While Duvall has averred that Bundy had a history of fraudulent and deceitful activity and speculated that Cronic must have known of this history due to Bundy's association with Cronic's son, "(t)he law does not authorize a finding that conspiracy exists merely because of some speculative suspicion." *Summit Automotive Group*, supra at 880 (2) (citation and punctuation omitted). For these reasons, the trial court erred in denying Cronic summary judgment on the RICO counterclaim, and we reverse that ruling.

(ii) *K & J.*

But questions of fact preclude summary judgment to K & J on the RICO claim. Where "there is evidence that [an entity's] agents or employees committed the predicate offenses . . . and there are material issues with respect to whether [the entity] was a party to or involved in the commission of these offenses[,] the RICO enterprise may consist of a corporation and its agents or employees." *Reaugh v. Inner Harbour Hosp.*, 214 Ga. App. 259, 264 (5) (a) (447 SE2d 617) (1994) (citations omitted). There is evidence here that K & J was involved in Bundy's transactions with Duvall Ford: Bundy was deeply involved in the corporation, the transactions

24

with Duvall Ford were consistent with the internet car sales that were K & J's business, an incorrect version of K & J's corporate name was used in the transaction involving the 2009 Chevrolet Tahoe, and Bundy wrote some checks to Duvall Ford and to Audi Financial Services on the "Kerrie's Prices" bank account belonging to K & J. In addition, an employer may be vicariously liable for the criminal acts of an employee in a claim for civil RICO under certain circumstances. See *Clark v. Security Life Ins. Co.*, 270 Ga. 165, 167-168 (2) (509 SE2d 602) (1998), disapproved in part on other grounds by *Williams*, supra, 280 Ga. at 633 (1). Such liability attaches if the employer's board of directors or managerial official, acting within the scope of that person's employment, authorized, requested, commanded, performed, or recklessly tolerated the employee's acts. Id. As discussed above, the evidence as to the precise nature of Bundy's relationship with K & J is not clear, see Division 2 (b) (ii), supra, but Duvall averred that Bundy was an officer of K & J and there is, at the very least, evidence to support a finding that K & J employed Bundy. Moreover, Cronic testified that Bundy "kept writing checks" on the "Kerrie's Prices" bank account when she was unauthorized to do so, leading him to close that account. That testimony is circumstantial evidence that could support a finding that Cronic, as K & J's president,

25

recklessly tolerated Bundy's actions. The trial court did not err in denying K & J summary judgment on the RICO counterclaim, and we affirm that ruling.

*Judgment in Case No. A18A1379 affirmed. Judgment in Case No. A18A1380 affirmed in part and reversed in part. Barnes, P. J., concurs. Ray, J. concurs in Divisions 1(b) and 2, and in the judgment only as to Division 1(a).**

**DIVISION 1(a) OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2.**