## A10A0263. WATSON v. THE STATE.

(695 SE2d 416)

BARNES, Presiding Judge.

A jury convicted Ralph Edwin Watson of rape, and he appeals, contending the evidence was insufficient to find him guilty. He also asserts the trial court should have inquired about a possible violation of the rule of sequestration and that it erred in allowing the State to recall a witness who had been excused. For the reasons that follow, we affirm.

1. We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Brown v. State*, 293 Ga. App. 633 (667 SE2d 899) (2008). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

Viewed in that light, the evidence at trial established that the victim lived with her 22-year-old daughter in a house ten miles outside of town in a secluded area. While remodeling her house, the victim selected a carpet and tile contractor from a list she obtained from her supplier. In March or April 2003, Watson, his brother, and

another man worked on the floors in the victim's house for three days, installing carpets and laying tile. While they were there, the victim in passing invited them all to come to her church, which she explained she always did, and offered to give away her china cabinet, which she described as "massive" and too heavy for her to move. She explained that she was buying new furniture and did not want to advertise the old cabinet for sale because she was not comfortable having strangers come out to her house. Watson accepted the offer, and since the men had to move the cabinet anyway to install the flooring, he took it with him one of the days he was working at the house. The victim established no relationship with Watson and did not have much conversation with him. The men finished the job and no further work was needed on the carpets or floors.

Several weeks later, Watson came to service at the victim's church. She did not know he was coming, and after someone pointed him out to her she "did not want to be rude," so she approached him and said she was glad he came. She did not remain for the rest of the church service because she taught a children's class, and had no further conversation with Watson.

On June 16, 2003, Watson pulled into the victim's driveway, right up to her door. The victim did not know he was coming, and her daughter had just left the house to run some errands. The victim was on the phone, and her dogs, which were German shepherds trained for protection, went out to meet the vehicle. Watson rolled down his window and said he had been in the area doing some jobs and had come by to check on the flooring and make sure everything was done right. The victim protested that nothing was wrong with the floors, but Watson got out of his van anyway, and the victim said, "Well, if you think it's necessary." She directed the dogs to go lie down and told the person she had been talking to on the phone she had to hang up to talk about the floor. The dogs were very well-trained, and once she told them someone was okay, they did not further challenge that person.

Watson came into the house and the two went into the kitchen, where there had been some initial problems with the tiles sliding and cracking, which had been resolved. Watson said he saw a flaw and would have to return for some repairs, but the victim said they were fine. He wanted to check the rest of the flooring, and began talking about the victim "needing a man around there and things like that," and then wanted to check the floor in the master bathroom, which had been replaced. Despite the victim's protestations that the floors were fine, Watson insisted on checking his work, and the victim explained that she understood his reasoning because she had done the same thing when she was in business for herself. She started down the hall with him behind her, but once she got to the master

bedroom it occurred to her she did not want or need to be back there with him. As she tried to go around Watson in the hallway, he grabbed her arms and tried to kiss her.

The victim described her ensuing ordeal, as she struggled to get away and to reason with Watson, fearing her daughter would come home and either find her being molested or dead. Watson began "making a grunting sound" and his entire expression changed. The more she tried to fight with him the harder his grip became, and he shoved her into the bedroom and onto the bed. She kept trying to reason with him, thinking they had a business relationship so he must be a reasonable person, but "he had long since passed any point of reasoning with me. He was — he had a wild look in his eyes and he was grunting and just like holding me down." The victim tried to get up but had been very ill and was unable to get free. She was "just terrified," and thought that if she fought too hard he would kill her and her daughter would find her dead. Eventually he jerked her shorts to the side and penetrated her, then when he finished the sexual act he let the victim get up.

An investigator testified that Watson voluntarily talked to him about the victim's allegations. Upon questioning, Watson admitted having intercourse with the victim but claimed it was consensual. He admitted she had said no and tried to pull away from him at least three times, and the investigator arrested him for sexual assault.

To prove Watson guilty of rape, the State was required to show that he had "carnal knowledge [with the victim,] forcibly and against her will." OCGA § 16-6-1 (a) (1). OCGA § 24-4-8 provides that "[t]he testimony of a single witness is generally sufficient to establish a fact." Watson argues that the State should have to offer corroborating evidence of some kind to prove the serious offense of rape. Such corroborating evidence was available in other rape conviction cases affirmed by this court; for example, in *Machuca v. State*, 279 Ga. App. 231 (630 SE2d 828) (2006) and *Freeman v. State*, 208 Ga. App. 503 (430 SE2d 867) (1993) the victims had physical injuries. In *Wells v. State*, 208 Ga. App. 298 (430 SE2d 611) (1993), the defendant had been scratched. And in *Sims v. State*, 275 Ga. App. 836 (621 SE2d 869) (2005), an officer identified the defendant from a police sketch, among other things. Watson argues that this case, to the contrary, is "a strict he said/she said with no other corroborating evidence," and asserts that as a matter of law a reasonable doubt exists as to his guilt. While in those cases the State had additional evidence that the defendant committed the crime, we have never held that such evidence is necessary to corroborate a victim's testimony. The State does not have to prove that a victim was physically injured to prove rape; the victim's testimony about the nonconsensual and forcible nature of her contact with Watson is

sufficient to establish that the carnal knowledge occurred without her consent. See, e.g., *Brown v. State*, supra. Additionally, here the victim made an immediate outcry and several witnesses testified that she was distraught following her assault.

We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Watson guilty beyond a reasonable doubt of rape. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Watson contends the trial court erred by failing to inquire of witnesses whether they had overheard any of the victim's testimony while they were waiting outside the courtroom, which resulted in a violation of the Rule of Sequestration, OCGA § 24-9-61 ("[I]n all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude a witness.").

After the victim, who was the first witness, testified on direct examination, courthouse staff alerted the trial court that the witness's testimony could be heard in the lobby outside the courtroom. The court immediately had the volume on the witness's microphone turned down, and tested to make sure no one outside could hear a witness testifying. Watson then began cross-examining the victim with no further discussion about the volume of her previous testimony. Watson raised no contemporaneous objection and did not ask the trial court to inquire of other witnesses what they had overheard, and thus waived his right to make this argument on appeal. *Earnest v. State*, 262 Ga. 494, 495 (2) (422 SE2d 188) (1992).

3. Watson contends the trial court abused its discretion in allowing the State to recall its witness after she had been excused the day before, arguing that the State improperly coached the witness after her initial testimony. During redirect on the first day, the State asked the witness, who was the victim's daughter, whether she had gone back home before she gave her written statement to the police, and she could not recall. When asked who went back to the house, the witness responded that she could not recall.

On the morning of the second day of trial, the State asked the court for permission to recall the victim's daughter. The State explained that after court ended the previous day, it asked the daughter if she remembered going back to the house with the police officer, without telling her about anyone else's testimony, and she had remembered. The officer and investigator had not yet testified. Watson objected on the ground that the State had coached the witness by telling her what it needed, but the court overruled the objection and allowed the State to recall the victim's daughter.

The daughter testified that after she testified the day before, the

State asked her "more about who went with me back home and if I found anything." She then remembered that she returned to her mother's house with the officer to retrieve the business card from the kitchen and a towel from the bathroom, which is where her mother told her the items would be located, and then took them to the hospital. The investigator later testified that the officer gave him the items at the hospital, and he took custody of them. He sent the towel to the crime lab, but because Watson admitted having sex with the victim, the investigator did not have it examined for DNA.

"[A] judge has broad discretion to allow the recall of a witness, even one [who] has been excused." *Watkins v. State*, 253 Ga. App. 382, 384 (1) (559 SE2d 133) (2002). A review of the transcript reveals no indication that the State improperly coached the witness, and under these circumstances, we find no abuse of the court's discretion.

4. Finally, Watson contends the trial court erred in allowing the State to extend the scope of its redirect beyond matters raised in cross-examination. It failed, however, to raise that specific objection, only objecting generally to allowing the State to recall the witness (see Division 3).

Even if Watson had objected properly, the trial court made no error.

> Trial courts generally have discretion regarding the re-examination of witnesses. They may order a witness re-called for further cross-examination and permit a party to introduce additional evidence after that party has rested. They also may permit a questioner to inquire into matters on redirect or recross that should have been inquired into earlier but had been overlooked, even though redirect and recross are usually not for introducing new topics.

(Citations omitted.) *Thomas v. State*, 275 Ga. 882, 883 (2) (572 SE2d 537) (2002).

*Judgment affirmed. Blackburn and Bernes, JJ., concur.*

DECIDED MAY 19, 2010.

*Jeanne C. Davis*, for appellant.
*N. Stanley Gunter, District Attorney, William J. Langley, Assistant District Attorney*, for appellee.