**THIRD DIVISION
ANDREWS, P. J.,
DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 19, 2014**

# In the Court of Appeals of Georgia

A13A1788. HAYNES v. THE STATE.

McMILLIAN, Judge.

Darrion Haynes appeals the denial of his motion for new trial following his conviction by a jury of rape, attempt to commit child molestation, and enticing a child for indecent purposes. On appeal, he asserts that the State failed to prove that he was guilty of rape beyond a reasonable doubt, that the trial court erred in rejecting his request to strike a juror for cause, and that he received ineffective assistance of counsel. Finding no error, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence showed that Haynes was S. M.'s older half-brother; they shared the same father but different mothers. S. M. lived with her mother, but in 2006, when she was ten to eleven years

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

old, she often spent the night with her paternal grandparents while her mother underwent chemotherapy. During this period, Haynes also stayed with the grandparents "off and on."

One day in late 2006, during one of S. M.'s visits to the grandparents' home, she was sitting on the bed in her grandfather's bedroom playing a video game when Haynes joined her. Everyone else was out of the house. After briefly discussing the video game, Haynes lay down on the bed and began to pull his pants down. He then hugged S. M. to him, and restraining her hands, put his penis inside the child's vagina (the "First Incident"). S. M. testified that she did not want Haynes to have sex with her, and when Haynes penetrated her, it hurt and she felt nauseated.

Haynes also attempted to have sexual relations with S. M. on another occasion. S. M. testified that Haynes came to where she was sleeping at the grandparents' house and asked her to come into the kitchen to make him something to eat. Everyone else in the house was asleep. S. M. climbed on top of the washing machine to reach some food items, and when she climbed down, Haynes pushed her against the washing machine. S. M. pushed back. As they tussled, they fell to the floor and Haynes began removing his pants and trying to get on top of her. They continued to struggle, and S. M. eventually was able to get away by kicking and pushing Haynes. She said that

2

she did not tell anyone about these incidents because she was scared of her family's reaction since they all liked Haynes.

Afterwards, S. M.'s mother observed that S. M. was acting strangely. She did not want to go to her grandparents' house, her grades slipped, she did not want to sleep alone, and she repeatedly went to the bathroom. S. M.'s mother took her to a pediatrician to address the urinary issues on March 12, 2007. S. M. and her mother reported that she had vaginal itching and a "white, watery, foul discharge." S. M. initially told both the doctor and her mother that she had not been sexually active, but the doctor diagnosed her with a sexually transmitted disease ("STD"). The doctor further testified that although she found no fissures or tearing in S. M.'s genital area,[2] such findings were not inconsistent with sexual abuse. On the ride home, S. M. told her mother about the incidents with Haynes, and the mother called the doctor to relay this information. The doctor reported the matter to police.

Dr. Jennifer Hopkins-Naylor of the Georgia Center for Child Advocacy later interviewed S. M., and the video-taped interview was played for the jury. During that interview, S. M. stated that just before the First Incident, Haynes tried to lay on top

_____

[2] The doctor explained that the child's hymen was not intact "per se," but that the area appeared to be undergoing a softening that occurs as a female transitions from pre-puberty to puberty, which makes the hymen less visible.

3

of her, and she told him to get off. She told Hopkins-Naylor that Haynes "forced his penis inside [her] vagina" during the First Incident and that she pulled away from Haynes and pushed him off the bed onto the floor. She said the incident made her feel "sick."

Haynes also testified in his own defense and denied having sexual relations with S. M. Both Haynes and his girlfriend also denied ever having an STD. But S. M.'s doctor testified that individuals, especially men, who contract the particular STD at issue could be asymptomatic, meaning they showed "absolutely no symptoms."

1. Haynes argues that the State failed to present sufficient evidence on the requisite element of force to support his conviction for rape.

Under Georgia law, "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will[.]" OCGA § 16-6-1 (a) (1). Applying this statute, the Georgia Supreme Court has interpreted the terms

> "forcibly" and "against her will," as two separate elements in rape cases. The term "against her will" means without consent; the term "forcibly" means acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation. The fact that a victim is under the age of consent may supply the "against her will" element in a forcible rape case since it shows that the victim is incapable of giving

4

legal consent. The same fact cannot supply the element of force as a matter of law in rape cases . . . .

(Citations omitted.) *State v. Collins*, 270 Ga. 42, 42-43 (508 SE2d 390) (1998).[3] Thus, it is well settled that "the state must prove the element of force to obtain a conviction for forcible rape of a victim under the age of consent," Id. at 42; *Drake v. State*, 239 Ga. 232, 233 (236 SE2d 748) (1977), but who are ten years of age or older.[4] Nevertheless, "the quantum of evidence to prove force against a child is minimal." *Collins*, 270 Ga. at 44-45. And such force may be proven by direct or circumstantial evidence. *Wightman v. State*, 289 Ga. App. 225, 228 (656 SE2d 563) (2008).

Here, the victim, who was ten or eleven years old at the pertinent time, testified at trial that she did not want Haynes to have sex with her, nor did she ask him to have sex. Instead, she was sitting alone in her grandfather's bedroom playing a video game, with no one else in the house, when Haynes came into the room. He then

---

[3] "Collins was superseded by statute as stated in *State v. Lyons*, 256 Ga. App. 377, 378-379 (568 SE2d 533) (2002), but Collins' reasoning applies here inasmuch as [S. M.] was under the statutory age of consent but not less than ten years of age." (Citation and punctuation omitted.) *Thomas v. State*, 306 Ga. App. 8, 9, n. 2 (701 SE2d 525) (2010).

[4] Under OCGA § 16-6-1 (a) (2), "carnal knowledge of . . . [a] female who is less than ten years of age" is rape without regard to proof of lack of consent and force.

hugged the child to him, restrained her hands and "forced" his penis inside her. This action hurt S. M. and made her feel sick. She pulled away from Haynes and then pushed him off the bed onto the floor. Under these circumstances, we find the evidence sufficient to authorize a finding of force within the meaning of OCGA § 16-6-1 (a) (1). See *Bradberry v. State*, 297 Ga. App. 679, 681 (1) (678 SE2d 131) (2009) (victim's description of intercourse as "painful authorized the jury to infer [the] sexual act was perpetrated by use of physical force") (citation and punctuation omitted); *Roberts v. State*, 242 Ga. App. 621 (530 SE2d 535) (2000) (considering the circumstances surrounding the rape, evidence supported finding of requisite force even though no physical evidence of sexual assault and victim testified that she was scared based upon what she had seen in the movies not based on any action or statement of defendant); *Casey v. State*, 237 Ga. App. 461, 462 (3) (515 SE2d 429) (1999) (ten-year-old victim's testimony that she did not want defendant to have sex with her and she did not ask him to do it, along with evidence that she asked him to stop, was sufficient to prove force).

Moreover, the victim's testimony was corroborated at trial by her mother's observations of her behavior following the incidents, as well as evidence that she had contracted an STD. Even though no evidence existed that Haynes or his girlfriend had

6

this disease, the doctor testified that it was often asymptomatic. And although the victim's genital area showed no sign of tearing or fissures, the doctor testified that this lack of evidence was not inconsistent with sexual assault. See *Watson v. State*, 304 Ga. App. 128, 130-131 (695 SE2d 416) (2010) (State does not have to prove that a victim was physically injured to prove rape; victim's testimony alone may be sufficient).

Based upon this and other evidence at trial, we find that the jury was authorized to find Haynes guilty of rape beyond a reasonable doubt.

2. Haynes next asserts that the trial court erred in failing to excuse a juror for cause after the juror indicated that she had been a victim of child molestation, that she was not impartial, that she had already formed an opinion about guilt or innocence, and that she would expect the defense to prove Haynes's innocence.

> Before a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. The decision to strike a juror for cause lies within the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of discretion.

(Citation omitted.) *Foster v. State*, 271 Ga. App. 426, 428 (2) (609 SE2d 751) (2005).

7

During voir dire, Juror No. 23 testified that when she was six years old, she was sexually assaulted by the son of her school's principal, who was sixteen or seventeen years old at the time. She did not report the incident until she was a teenager. She testified that she had already formed an opinion about guilt or innocence, she was not impartial, and that "you would have to convince me of innocence." The prosecutor then asked her whether she could do what the law required and put the burden of proof on the State if the trial court instructed her that the State had that burden, that the defense was not required to prove anything or to put up any evidence, and that the defendant was not required to testify. She replied, "I would – of course I would have to I guess as you keep saying compartmentalize and try and be impartial. I wouldn't want to, but I could." She indicated that she thought she could be fair and impartial. In response to defense questioning, Juror No. 23 reiterated that she could "compartmentalize," but she did not want to and she did not believe that she was the right juror for the case.

The defense subsequently asked that Juror No. 23 be stricken for cause, but the trial court denied the request. The judge explained:

> I think she said that she could compartmentalize, [but] she doesn't want to. If we left it up to the jurors, we would have three of them serving, if

8

we said who wants to. Most folks always indicate they don't [want to] be here. And particularly these charges, nobody wants to do it. So the question is can you do it. She said she could. So I'll leave her. . . . [I]f she can do it, she can do it. She's on the jury.

Thus, "the trial court reasoned that the [juror's] comment did not establish a bias or a fixed belief in the guilt or innocence of the accused, but rather reflected a common opinion of jurors in this type of case involving a difficult and unpleasant subject." *Pearce v. State*, 300 Ga. App. 777, 780 (2) (686 SE2d 392) (2009).

It is well settled that "[a] potential juror's doubts as to his or her own impartiality or reservations about his or her ability to set aside personal experiences do not require the court to strike the juror, as the judge is uniquely positioned to observe the juror's demeanor and thereby to evaluate his or her capacity to render an impartial verdict." *Brown v. State*, 243 Ga. App. 632, 633 (1) (534 SE2d 98) (2000). Rather, "[a] juror who expresses a willingness to 'try' to be objective and whose bias arises from feelings about the particular crime as opposed to feelings about the accused may be eligible for service." Id.

Despite Juror No. 23's initial reaction to the charges in the case, she never indicated any bias against Haynes personally. Moreover, she indicated that she could put aside her prior life experiences and try to be fair and impartial. Accordingly, we

9

find no abuse of discretion. See *Pearce*, 300 Ga. App. at 781 (2) (no abuse of discretion in case involving charges of aggravated sexual battery, child molestation, and statutory rape where juror indicated that he had been a victim of child molestation, but nevertheless thought he "probably could" be fair and impartial); *Foster v. State*, 271 Ga. App. 426 (609 SE2d 751) (2005) (no abuse of discretion in trial court's failure to excuse juror, who was the mother of a child molestation victim and who was scheduled to testify the same week in the perpetrator's trial, where juror indicated that she could be fair and impartial). Compare *Garduno v. State*, 299 Ga. App. 32, 33-34 (2) (682 SE2d 145) (2009) (finding abuse of discretion in failure to excuse former child abuse investigator who often interviewed child molestation victims, who was trained "to believe the victim is telling the truth," and who, although she believed she should could be fair and impartial, indicated a persistent bias in favor of child victims).

3. Haynes further asserts that he received ineffective assistance of counsel because his trial attorney failed to test the adversarial process by not utilizing an expert to testify as to the problems with the forensic interview of the victim; by failing to cross-examine the forensic interviewer on her interviewing techniques and potential bias for the prosecution; by not addressing the impact those questions would

have had on the victim; and by not cross-examining the victim on her inconsistent statements.

> In order to prevail on this claim, [Haynes] must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. To meet the first prong of the required test, he must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Norton v. State*, 293 Ga. 332, 337 (7) (745 SE2d 630) (2013). See also *Strickland v. Washington,* 466 U.S. 668 (104 SCt 2052, 80 LEd2d 674) (1984).

Haynes has the burden of proof under both prongs of this test. *Brown v. State*, 239 Ga. App. 674, 675 (1) (522 SE2d 41) (1999). But "[w]e are not

11

required to address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either one of them." (Citation and punctuation omitted.) *Burger v. State*, 323 Ga. App. 787, 788 (748 SE2d 462) (2013). Moreover,

> [t]he standard regarding ineffective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance. In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy. Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result.

(Citation omitted.) *Davis v. State*, 290 Ga. 584, 587 (2) (b) (723 SE2d 431) (2012).

At the hearing on the motion for new trial, the evidence showed that at the time of Haynes's trial, his trial attorney had been engaged in criminal defense work for approximately 14 years and had worked on approximately 30 cases involving crimes such as rape or child molestation. Haynes was adamant that he did not commit the crimes, and the trial strategy was to emphasize the "many inconsistencies" in the victim's statements, as well as the surrounding

12

factual circumstances that would seem to have made it impossible for Haynes to have committed the crimes. Trial counsel explained that the inconsistencies were not limited to the forensic interview; rather, S. M.'s story "[did not] add up based on just common sense" and the layout and circumstances of the crime scene.

(a) *Failure to call expert witness* – Haynes asserts that his trial counsel erred in failing to call an expert witness to testify as to flaws in Dr. Hopkins-Naylor's interviewing technique and thus in failing to address the potential effect those questions may have had on the victim.

But trial counsel testified that he was trying another case with similar charges at around the same time he was handling Haynes's case, and he contacted a psychologist for consultation as a potential expert in both cases. The expert did not prepare written reports, but approximately one year after the expert received the case files, trial counsel spoke with him on the phone. They discussed both cases at the same time, and trial counsel recalled that the expert had more concerns with the inconsistencies in one case than in the other. He commented on the number of leading questions in one of the videotaped victim interviews, and he also discussed the suggestibility of, and flaws in, the

13

interviewing technique with regard to one of the videos. At the hearing, however, trial counsel could not recall which of the two cases caused the expert more concern.

Trial counsel could not recall why he did not put the expert he had retained on the stand, but he did not use the expert for either of the two cases. He conceded that it was possible that he chose not to call the expert because he did not want to give undue influence to the interviewing techniques, but rather wanted to focus on the inconsistencies in the victim's story.[5]

"It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics; tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances." (Citations omitted.) *Dickens v. State*, 280 Ga. 320, 321 (2) (627 SE2d 587) (2006). "Although expert testimony concerning interviewing techniques of children is admissible in molestation cases, the decision on whether to call an expert witness is one of trial strategy." (Citation and punctuation omitted.)

---

[5] The expert did not testify at the motion hearing, but Haynes's appellate counsel made a proffer of the expert's expected testimony.

*Towry v. State*, 304 Ga. App. 139, 147 (2) (f) (695 SE2d 683) (2010). "Trial strategies do not equate to ineffective assistance merely because appellate counsel would have pursued a different strategy." (Citations omitted.) *Pearce*, 300 Ga. App. at 786 (7) (a).

We find that Haynes failed to carry his burden of demonstrating that the failure to call the expert constituted deficient performance. Although his trial attorney could not remember the specific reasons he chose not to call the expert, he made that decision shortly after speaking with him, suggesting that he could have made that decision based on his chosen trial strategy. We agree that reasonable, competent trial counsel could have made the strategic decision not to call the expert based on what counsel learned in his interview of the expert and the anticipated trial strategy to focus on inconsistencies in the victim's statements. Accordingly, we find no ineffective assistance of counsel on this ground. See *Wade v. State*, 305 Ga. App. 382, 386 (2) (c) (700 SE2d 827) (2010) (decision not to present expert testimony about the proper techniques for interviewing children not ineffective assistance of trial counsel where decision was part of trial strategy).

(b) *Failure to cross-examine forensic interviewer* – Similarly, we find no merit to Haynes's contention that his trial counsel was deficient in failing to cross-examine Dr. Hopkins-Naylor on her interviewing technique. Trial counsel did not recall why he did not pursue this line of cross-examination, but he said that "what jumped out at [him]" from the interview were the inconsistencies and not necessarily the interviewing techniques. He also acknowledged that the techniques employed were similar to those he had seen in other forensic interviews of sexual abuse victims. He further recalled that S. M.'s story changed dramatically during the middle of the interview, but he was not sure that this was due to the interviewing techniques or to her just changing her story. Although it appeared to trial counsel that Dr. Hopkins-Naylor "had to lead [S. M.] a little bit" to get her to say Haynes had sexual intercourse with her, his primary focus in reviewing the videotape was the many inconsistencies in the victim's story. Moreover, we note that trial counsel addressed the leading nature of the forensic interview during his closing argument. Again, we find that Haynes has failed to establish that trial counsel was not acting in accord with a reasonable trial strategy.

16

(c) *Failure to cross-examine victim* – Trial counsel also testified that he did not cross-examine the victim regarding the inconsistencies in her statement because to him the inconsistencies seemed "pretty obvious." He recalled that the victim was "all over the place," just "one inconsistency after another."

Although trial counsel did not specifically cross-examine the victim on inconsistencies in her statements, he said he thought these inconsistencies were obvious from the videotape and her trial testimony. Thus, trial counsel's "method of cross-examination was a matter of tactics and trial strategy." *Brogdon v. State*, 262 Ga. App. 673, 675 (2) (586 SE2d 344) (2003). Moreover, trial counsel thoroughly addressed the claimed inconsistencies in his closing argument to the jury. Under these circumstances, we find that Haynes failed to establish that his trial attorney's performance was deficient. See id. at 675 (2) (trial counsel's failure to cross-examine witness on inconsistencies in his testimony trial strategy where he addressed the issue in another manner); *Williams v. State*, 239 Ga. App. 598, 599 (2) (521 SE2d 650) (1999) (failure to cross-examine witness on inconsistencies in testimony not deficient performance where the alleged inconsistencies were apparent from the direct examination, because further cross-examination on this issue may

17

have been superfluous and potentially harmful in that the witnesses may have been able to explain the inconsistencies).

Accordingly, we affirm the trial court's denial of Haynes's motion for new trial on the ground of ineffective assistance of counsel.

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*