**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 12, 2025**

# In the Court of Appeals of Georgia

A25A1202. GASPAR-MATEO v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted William Gaspar-Mateo on one count of rape of a female less than ten years in age and one count of forcible rape of that same child. Gasper-Mateo now appeals his convictions and the denial of his motion for new trial, contending the trial court erred in (1) failing to apply the rule of lenity by sentencing him on the count of rape of a female less than ten years in age rather than for statutory rape, and (2) denying his claim that trial counsel rendered ineffective assistance in several respects. For the following reasons, we affirm Gaspar-Mateo's convictions, but we vacate the trial court's sentence because it impermissibly imposed a sentence

on both rape convictions. So, we remand the case to the trial court for resentencing in a manner consistent with this opinion.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in 2010, Gaspar-Mateo began a relationship with Lida Diego-Pascual. Later that same year, Gasper-Mateo moved to the one-bedroom home where Diego-Pascual lived with her three children—including her then four-year-old daughter, A. F. At the time they began living together, Diego-Pascual usually worked during the day, and Gaspar-Mateo often watched the children while she was away.

About a year later, A. F.—who was now six years old and in the first grade—was watching television with one of her brothers (while their mother was at work) when Gaspar-Mateo asked if she wanted to play in the bedroom. Believing he had toys in the bedroom, A. F. agreed and followed him in there. But once A. F. entered the bedroom, Gaspar-Mateo locked the door, removed her clothes, and placed her on the bed. He then used one hand to hold A. F.'s hands above her head, used his other hand to cover her mouth, and inserted his penis into her vagina. About a minute —later, he stopped and A. F. noticed a white substance and some blood on her vagina

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

and stomach. Afterward, Gaspar-Mateo gave A. F. a towel to wipe herself off and told her not to tell her mother what happened.

On two additional occasions over the course of that year, Gaspar-Mateo repeated this conduct in a nearly identical fashion—taking A. F. into the bedroom, removing her clothes, holding down her hands, and covering her mouth, before inserting his penis into her vagina. And during this time, A. F. told no one what was happening to her. Sometime later, Gaspar-Mateo and Diego-Pascual—after having a son together—ended their relationship, and Gaspar-Mateo moved out of the home. Even so, because of their son, the former couple still saw each other regularly; but Diego-Pascual noticed that after Gaspar-Mateo moved out, A. F. did not want to be around him.

Several years later, when A. F. was in middle school, one of her teachers notified the school's social worker that she recently had more than five unexcused absences. And on February 10, 2021, the social worker discussed the absences with A. F., and she admitted to being absent without permission on those days. More precisely, A. F. told the social worker that she had an argument with her mother and had been feeling depressed (which included suicidal thoughts). Immediately, as

required, the school social worker contacted A. F.'s mother and a mental-health counselor, so A. F. could undergo a mental-health assessment. And during that assessment, A. F. disclosed to her mother and the school social worker that Gaspar-Mateo had raped her several times when she was in first grade. The school social worker then contacted law enforcement to report A. F.'s disclosure. A few weeks later, A. F. went to a local child-advocacy center for a forensic interview, during which she recounted the details of the sexual abuse.

Later, the State charged Gaspar-Mateo, via indictment, with one count of rape of A. F., a female less than ten years in age, and one count of forcible rape of A. F. The case ultimately proceeded to trial, during which the State presented the foregoing evidence and also played a video recording of A. F.'s forensic interview. Gaspar-Mateo testified in his own defense and denied ever behaving inappropriately toward A. F. He added that he was aware of A. F.'s mental-health issues and believed her mother, Diego-Pascual, was the source of A. F.'s allegations against him. At the end of trial, the jury convicted Gaspar-Mateo on both counts. The trial court then imposed a life sentence on Count 1 and a life sentence on Count 2 to be served concurrently with Count 1.

Gaspar-Mateo obtained new counsel and filed a motion for new trial, arguing the trial court failed to apply the rule of lenity in imposing its sentence. He also claimed his trial counsel rendered ineffective assistance in several respects, including by failing to retain an expert witness to challenge, among other things, the adequacy of A. F.'s forensic interview. The trial court conducted a hearing on the motion, during which Gaspar-Mateo's trial counsel testified regarding his representation. Gaspar-Mateo also presented the testimony of a psychologist with extensive experience in conducting forensic interviews, who testified about alleged deficiencies with A. F.'s interview. When the hearing ended, the trial court took the matter under advisement, but it later denied Gaspar-Mateo's motion for new trial. This appeal follows.

1. Gaspar-Mateo first contends the trial court erred in failing to apply the rule of lenity when it sentenced him on the count of rape of a female less than ten years in age rather than for statutory rape (which imposes a lesser penalty). More precisely, he argues the rule of lenity applied because his alleged conduct would support a conviction under either of these two crimes.[2] And in a rather convoluted addendum,

_____

[2] *Compare* OCGA § 16-6-1 (a) (2) (providing that a person "commits the offense of rape when he has carnal knowledge of . . . [a] female who is less than ten years of

he further claims that if the trial court had correctly applied the rule of lenity, the State

nevertheless failed to provide the corroboration required for a conviction on statutory

---

age"); OCGA § 16-6-1 (b) (providing that, *inter alia*, a person convicted of rape shall be punished "by imprisonment for life without parole, by imprisonment for life, or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life"), *with* OCGA § 16-6-3 (a) (providing that "[a] person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse"); OCGA § 16-6-3 (b) (providing, *inter alia*, that "a person convicted of the offense of statutory rape shall be punished by imprisonment for not less than one nor more than 20 years"). *See Gordon v. State*, 334 Ga. App. 633, 634 (780 SE2d 376) (2015) (explaining the rule of lenity "ensures that if and when an ambiguity exists in one or more statutes, such that the law exacts varying degrees of punishment for the same offense, the ambiguity will be resolved in favor of a defendant, who will then receive the lesser punishment" (punctuation omitted)); *Sambou v. State*, 358 Ga. App. 645, 655 (854 SE2d 392) (2021) (referring to the rule of lenity "as a sort of junior version of the vagueness doctrine," which "requires fair warning as to what conduct is proscribed" (citation and punctuation omitted); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 299 (1st ed. 2012) (noting that the rule-of-lenity canon is justified by the well-established precept that "when the government means to punish, its commands must be reasonably clear").

rape.[3] But we need not address this issue because we vacate Gaspar-Mateo's sentence on a different ground and remand this case to the trial court for resentencing.

Turning to the relevant statute, OCGA § 16-6-1 (a) provides: "A person commits the offense of rape when he has carnal knowledge of: (1) [a] female forcibly and against her will; or (2) [a] female who is less than ten years of age." And as noted above, the State charged Gaspar-Mateo with rape under both subsections of the statute. Count 1 alleged that Gaspar-Mateo "between the 2nd day of August 2011, and the 2nd day of August 2013, the exact date of the offense being unknown to the Grand Jury, did have carnal knowledge of [A. F.], a female less than 10 years of age . . . ." And Count 2 alleged that he "between the 2nd day of August 2011, and the 2nd day of August 2013, the exact date of the offense being unknown to the Grand Jury, did have carnal knowledge of [A. F.], a female, forcibly and against her will . . . ."

---

[3] *See* OCGA § 16-6-3 (a) (explaining that no conviction shall be had for statutory rape "on the unsupported testimony of the victim"). Gaspar-Mateo does not challenge the sufficiency of the evidence supporting his rape conviction under either OCGA § 16-6-1 (a) (1) or (2). As a result, we are not obligated to address that issue. *See Davenport v. State*, 309 Ga. 385, 396 (4) (b) (846 SE2d 83) (2020) (concluding there is no compelling reason to retain the practice of *sua sponte* review of the sufficiency of the evidence in cases in which the appellant is not sentenced to death).

Although A. F. testified at trial that Gaspar-Mateo raped her more than once, the two counts in the indictment were actually *alternative* allegations as to the manner in which the crime was committed rather than allegations of two separate and distinct instances of rape. And as the Supreme Court of Georgia has explained, "in this state, an indictment for a single crime which may have been committed in more than one way can take one of two recognized forms."[4] One such form is indictment by "means of a *single count* which contains alternative allegations as to the various ways in which the crime may have been committed."[5] But in addition to the single-count form of indictment, there is "the *alternative counts* form which the State chose to employ in the instant case."[6] Indeed, it has long been recognized that "the *same offense*, that is the same species of offense, may be charged in different ways in *several counts* to meet

---

[4] *Lumpkins*, 264 Ga. 255, 256 (3) (443 SE2d 619) (1994).

[5] *Id.*; *see Cotman v. State*, 342 Ga. App. 569, 580-81 (1) (804 SE2d 672) (2017) (explaining that the State could charge defendants with violating RICO Act in two ways within same count of the indictment).

[6] *Lumpkins*, 264 Ga. at 256 (3); *see Hulett v. State*, 296 Ga. 49, 52-53 (2) (766 SE2d 1) (2014) (explaining that the State may seek guilty verdicts on alternative theories of malice murder and felony murder, and, when the elements of malice and an underlying felony both exist in a murder case, the law does not preclude verdicts of guilty of both charges).

the evidence."[7] So, when one crime is set out "in various ways in the different counts to meet diversities in the proofs, no election of counts will ordinarily be required, but all will be left open for the jury to pass upon in their verdict."[8] Still, while the State may seek guilty verdicts on alternative theories of the same offense when the elements of both theories exist, when a valid guilty verdict is returned on both theories of that offense against the same victim, the defendant may be sentenced for only one of the counts, and the alternative count stands vacated by operation of law as "simply surplusage."[9]

---

[7] *Lumpkins*, 264 Ga. at 256 (2); *accord Gilbert v. State*, 65 Ga. 449, 450 (1) (1880); *Harris v. State*, 272 Ga. App. 650, 652 (2) (613 SE2d 170) (2005).

[8] *Harris*, 272 Ga. App. at 652 (2) (punctuation omitted).

[9] *See Hulett*, 296 Ga. at 52-53 (2) (holding that when a valid guilty verdict is returned on both malice murder and felony murder of the same victim, the defendant should be sentenced for the malice murder, and the alternative felony murder count stands vacated by operation of law as simply surplusage); *Ledford v. State*, 289 Ga. 70, 70, n. 1 (709 SE2d 239) (2011) (noting that the trial court properly treated a second kidnapping with bodily injury as mere surplusage), *disapproved on other grounds by Willis v. State*, 304 Ga. 686 (820 SE2d 640) (2018); *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993) (explaining that, given the defendant's conviction on malice-murder charge, convictions of felony murder were simply surplusage, which should have been disposed of by trial court's sentence of only one life sentence for the three murder counts); *Gonzales v. State*, 298 Ga. App. 821, 824 (1) (681 SE2d 248) (2009) (holding that trial court erred in sentencing defendant on both aggravated-battery counts based on a single unlawful act against the same victim (pushing her out

Here, the two counts in the indictment were alternative allegations as to the manner in which the rape was committed, rather than allegations of two instances of rape. Supporting this reading, the counts in the indictment are identical except that Count 1 charges Gaspar-Mateo with the rape of A. F. by alleging the elements in OCGA § 16-6-1 (a) (2) (*i.e.*, rape of a female under the age of 10) and Count 2 charges him with that offense by alleging the elements in OCGA § 16-6-1 (a) (1) (*i.e.*, forcibly and against a female's will).

In addition, during the charge conference, the State's prosecutor expressed concern with ensuring the jury understood that this rape could be committed in two ways, stating to the trial court:

> I do have a concern. Not that what you said is not correct, it is, but given that the State here charged rape two different ways I think we just need to make sure the jury knows that rape can be charged more than one way and so when I read that first sentence on rape, victim under ten: a

of a moving car), as second aggravated battery conviction was surplusage). *Cf. Pough v. State*, 325 Ga. App. 547, 548 (1) (754 SE2d 129) (2014) (explaining when two DUI charges are based on the same conduct, the evidence will not support convictions and sentencing on two offenses); *Womble v. State*, 290 Ga. App. 768, 771 (3) (660 SE2d 848) (2008) (concluding that defendant's convictions for possession of methamphetamine and criminal attempt to manufacture methamphetamine merged as a matter of fact, and thus defendant could not be sentenced for both offenses, when possession conviction was based on the same conduct as attempt conviction).

person commits the offense of rape when he has carnal knowledge of a female under the age of ten. Perhaps we could say to the jury that that is one way you can commit rape. And as long as you tell the jury that rape can be charged two different ways here we're okay. Because the way that's said, it may suggest that there's only that one way and in reality we all know the jury is going to be deliberating as to two different ways: one of those requires force, one of those does not. And so, if your Honor believes that that is vague enough to address that, I would certainly ask you to.

Seeking clarification, the trial court asked the State's prosecutor if he was referencing the charge related to rape of a female child under the age of ten, and the prosecutor responded:

Your Honor, that is correct. I mean, it may not be that big of an issue. You're going to define both. The concern I have is to just make sure the jury knows. I'll say it in close if I have to, but that it's charged two different ways, you don't have to have both in order to find him guilty. If you find one that's enough. And the way that first sentence reads it's almost like it defines that that's the only way it can be rape in Georgia and we all know that's not true.

Additional discussion then ensued, and at one point, the trial court asked if Count 2 was necessary; but neither party advocated for its removal, and the State's prosecutor explained that he wanted to charge it "in the alternative."

Finally, the trial court read both counts to the jury during its instructions, and further instructed: "When an indictment charges that the defendant committed a crime in more than one way, you may convict him if the evidence shows that the crime was committed in any one of the ways charged." And just after that, the trial court instructed the jury on the separate elements of both OCGA § 16-6-1 (a) (1) and (2).

But despite all these indications that the two counts in the indictment were alternative allegations as to the manner in which the rape was committed (as opposed to allegations of two instances of rape), the trial court imposed sentences for *both* counts. Indeed, the trial court imposed a life sentence on Count 1 and a life sentence on Count 2 to be served concurrently with Count 1. But in doing so, the trial court—as well as both parties[10]—failed to recognize that one of the rape counts had been vacated by operation of law as simply surplusage; and so the trial court erred.[11] As a result, we

---

[10] If an appellate court notices a void sentence issue in a direct appeal, as we have here, "we regularly resolve that issue, even [when] it was not raised in the trial court and is not enumerated as error on appeal." *Hulett*, 296 Ga. at 54 (2) (punctuation omitted); *see Bynes v. State*, 336 Ga. App. 223, 228 (2) (784 SE2d 71) (2016) (explaining that this Court is "empowered to correct a void sentence even [when] it was not raised in the trial court and is not enumerated as error on appeal" (punctuation omitted)).

[11] *See supra* note 9 & accompanying text.

vacate Gaspar-Mateo's sentence and remand the case to the trial court for resentencing in a manner consistent with this opinion.[12]

2. Gaspar-Mateo also argues the trial court erred in denying his claim that trial counsel rendered ineffective assistance in several respects. We disagree.

In evaluating Gaspar-Mateo's claims of ineffective assistance of counsel, we apply the well-established, two-pronged test from *Strickland v. Washington*,[13] which requires him to show that trial counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[14] Significantly, should a defendant "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[15] As a result, this burden,

---

[12] *See Hulett*, 296 Ga. at 56 (2) (d) (remanding case for trial court to resentence on counts that merged as a matter of law); *Womble*, 290 Ga. App. at 771 (3) (same).

[13] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[14] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[15] *McAllister*, 351 Ga. App. at 93 (6); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017); *Lawson v. State*, 365 Ga. App. 87, 95 (3) (877 SE2d 616) (2022).

"though not impossible to carry, is a heavy one."[16] Indeed, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[17] In fact, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[18] And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[19] So, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this

---

[16] *Jones v. State*, 292 Ga. 593, 599 (7) (740 SE2d 147) (2013).

[17] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[18] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016); *accord Lawson*, 365 Ga. App. at 95 (3).

[19] *Lockhart*, 298 Ga. at 385 (2); *accord Redding v. State*, 297 Ga. 845, 850 (5) (778 SE2d 774) (2015).

regard are reviewed *de novo*."[20] With these guiding principles in mind, we turn to Gaspar-Mateo's claims of ineffective assistance.

(a) *Failure to Retain an Expert.* Gaspar-Mateo first contends his trial counsel rendered ineffective assistance by he failing to consult with and retain an expert in forensic interviewing of children. More precisely, he claims this failure allowed deficiencies in A. F.'s forensic interview to go unchallenged. And during the hearing on his motion for new trial, Gaspar-Mateo presented a psychologist (with extensive experience in forensic interviews of children), who testified that A. F.'s forensic interview was deeply flawed. In particular, the psychologist claimed the interviewer's questions did not evoke A. F.'s own narrative account of the incidents and at times were leading. The psychologist also opined that the interviewer suggested facts not first presented by A. F. and did not test inconsistencies in her account. As a result, Gaspar-Mateo claims that if trial counsel had presented the psychologist (or a similar

---

[20] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

expert) as a witness, the forensic interview and A. F.'s credibility—the foundation of the State's case—would have been called into question.

It is, of course, well established that "the decision as to which defense witnesses to call is a matter of trial strategy and tactics; tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances."[21] And although expert testimony concerning interviewing techniques of children is "admissible in molestation cases, the decision on whether to call an expert witness is one of trial strategy."[22] Relatedly, the decision of how to deal with the presentation of an expert witness by the opposing side, including "whether to present counter expert

---

[21] *Haynes v. State*, 326 Ga. App. 336, 343 (3) (a) (756 SE2d 599) (2014) (punctuation omitted); *accord Dickens v. State*, 280 Ga. 320, 321 (2) (627 SE2d 587) (2006).

[22] *Haynes*, 326 Ga. App. at 343 (3) (a) (punctuation omitted); *accord Towry v. State*, 304 Ga. App. 139, 147 (2) (f) (695 SE2d 683) (2010); *see Sullivan v. State*, 308 Ga. 508, 512 (2) (b) (842 SE2d 5) (2020) (explaining "the decision whether to present an expert witness, like other decisions about which defense witnesses to call, is a matter of trial strategy that, if reasonable, will not sustain a claim of ineffective assistance" (punctuation omitted)); *Matthews v. State*, 301 Ga. 286, 289 (2) (800 SE2d 553) (2017) (noting that the decision whether to present an expert witness is a matter of trial strategy that, if reasonable, will not sustain a claim of ineffective assistance).

testimony, to rely upon cross-examination, to forego cross-examination [or] to forego development of certain expert opinion, is a matter of trial strategy which, if reasonable, cannot be the basis of a successful ineffective assistance of counsel claim.[23] Importantly, trial strategies do not equate to ineffective assistance "merely because appellate counsel would have pursued a different strategy."[24]

Here, trial counsel testified at the motion-for-new-trial hearing that the defense theory was Gaspar-Mateo had not committed the acts of which he was accused and he had nothing to hide. In fact, Gaspar-Mateo admitted that he was an undocumented immigrant in this country, could have fled to his home country when he came under suspicion, but chose not to do so. His trial counsel added that the defense focused on questioning A. F.'s credibility—*i.e.*, suggesting she fabricated her account because she did not disclose the alleged abuse until years later and only after facing discipline from her school for truancy. As for A. F.'s forensic interview, trial counsel did not believe there was any basis to challenge it on evidentiary grounds. Indeed, based on his

---

[23] *Chamberlain v. State*, 347 Ga. App. 775, 781 (3) (a) (819 SE2d 303) (2018) (punctuation omitted); *accord Gawlak v. State*, 310 Ga. App. 757, 759 (2) (a) (714 SE2d 354) (2011).

[24] *Haynes*, 326 Ga. App. at 343-44 (3) (a) (punctuation omitted).

decades of experience and having seen "hundreds" of such interviews, trial counsel believed he was prepared to effectively cross-examine the State's witness on this issue. Trial counsel added that he did not think retaining an expert in forensic interviews was necessary or beneficial. And given this explanation by an experienced attorney, "[w]e cannot say this strategic decision was outside the broad range of professional conduct presumed to be reasonable."[25] So, while Gaspar-Mateo's appellate counsel "might have made a different tactical decision, effectiveness of trial counsel is not evaluated by hindsight or by what present counsel would have done."[26] Trial counsel's decision to not call an expert, then, does not support a claim for ineffective assistance of counsel.[27]

---

[25] *Matthews*, 301 Ga. at 289 (2).

[26] *Chamberlain*, 347 Ga. App. at 781 (3) (a) (punctuation omitted).

[27] *See Matthews*, 301 Ga. at 289 (2) (holding that trial counsel's decision to challenge child victim's account through cross-examination rather than hiring a counter-expert was not so unreasonable as to constitute deficient performance); *Chamberlain*, 347 Ga. App. at 781 (3) (a) (concluding that "trial counsel's decision to forego presentation of counter expert testimony and to rely instead on cross-examination to address the interviewing techniques of the state's witnesses was a matter of trial strategy, and [defendant] did not establish that this tactical decision was unreasonable" (punctuation omitted)); *Haynes*, 326 Ga. App. at 343-44 (3) (a) (finding that although defendant's trial counsel could not remember the specific reasons he chose not to call the expert with whom he had previously consulted, given

(b) *Failure to Subpoena Records*. Gaspar-Mateo also argues his trial counsel rendered ineffective assistance by failing to subpoena records from A. F.'s school, a mental-health facility to which she was admitted, and DFCS, claiming the information in these records also called the child's credibility into question. And when asked about these records during the hearing on Gaspar-Mateo's motion for new trial, trial counsel testified—after interviewing all the witnesses about the allegations—that he did not believe the information in the records was valuable enough to his defense to warrant issuing a subpoena. Trial counsel added that the information contained in those documents came out over the course of the trial through witness testimony.

During the hearing on the motion for new trial, the psychologist testified that a review of these records and discussion of them at trial would have similarly called A. F.'s credibility into question. In particular, the psychologist testified that her school records from the time the sexual abuse was alleged to have occurred—when A. F. was six years old—did not indicate a drop in her grades or a significant number of unexcused absences. The psychologist also noted that the mental-health records indicated A. F. was not diagnosed with post-traumatic-stress disorder, which was

that the decision was made shortly after speaking with him suggested counsel could have made decision based on his chosen trial strategy).

"often the case" when a child has been sexually abused, but that she was *only* diagnosed with depression and anxiety and expressed suicidal ideation. Finally, the psychologist added that DFCS records showed (1) A. F. had not made a contemporaneous disclosure of the abuse to her mother, (2) A. F. told DFCS social workers she "felt safe" at home, (3) A. F.'s sister made a discredited allegation of sexual abuse against someone else, and (4) a medical examination of A. F.—at the time of her disclosure several years after the abuse—did not indicate any genital scarring. But the psychologist acknowledged that much of the information contained in those documents was, in fact, addressed by witnesses during the trial.[28]

Given these circumstances, Gaspar-Mateo has failed to overcome the strong presumption that his trial counsel's conduct fell within the broad range of reasonable professional conduct.[29] Indeed, the simple fact that "additional documents might have

---

[28] In response to this line of questioning by the State, the psychologist countered that he did not think the results of A. F.'s medical examination were discussed at trial. But this assertion is belied by the trial record. A. F. testified to undergoing a medical examination after her disclosure, and the parties stipulated that such examination did not indicate any signs of sexual abuse.

[29] *See Gilmer v. State*, 339 Ga. App. 593, 600 (2) (d) (794 SE2d 653) (2016) (holding trial counsel did not perform deficiently in failing to obtain documents given trial counsel did not testify that he received any information that would have led him to believe there were relevant DFCS or therapy records); *Dority v. State*, 335 Ga. App.

been helpful is not enough."[30] And even if were we to assume trial counsel's performance was deficient in this regard, Gaspar-Mateo has failed to show there is a reasonable probability that obtaining the records would have led to a different outcome at trial. As trial counsel testified, and as even the psychologist who testified at the motion-for-new-trial hearing acknowledged, much of the information contained in the documents was brought to the jury's attention through the testimony of other witnesses and was largely cumulative. As a result, Gaspar-Mateo failed to meet the heavy burden required to establish the prejudice prong of this ineffective-assistance claim.[31]

83, 106-07 (4) (i) (780 SE2d 129) (2015) (concluding defendant's claim that trial counsel should have obtained additional documents did not show deficient performance in light of trial counsel's testimony that he never had any indication that any such documents would have assisted him in defense, and that he thought his resources were better spent focusing on other matters).

[30] *Dority*, 335 Ga. App. at 107 (4) (i).

[31] *See Ryals v. State*, 321 Ga. 151, 158-59 (1) (b) (913 SE2d 604) (2025) (holding even if trial counsel performed deficiently by not introducing texts from defendant's cell phone, which allegedly supported defense theory, defendant failed to show prejudice as messages were largely cumulative of other testimony at trial); *Walker v. State*, 312 Ga. 232, 240 (4) (b) (862 SE2d 285) (2021) (concluding defendant failed to show prejudice to support ineffective assistance claim given that evidence of criminal charges against witness was cumulative of evidence admitted through testimony at trial); *Hudson v. State*, 325 Ga. App. 657, 659 (2) (754 SE2d 626) (finding

(c) *Failure to Adequately Cross-examine Witnesses*. Piggy-backing onto his first two claims, Gaspar-Mateo further maintains that trial counsel's failure to retain an expert witness and subpoena certain documents resulted in him being unable to adequately cross-examine A. F., her mother, and the child-advocacy counselor who testified regarding her review of A. F.'s forensic interview.[32] But similar to decisions regarding which witnesses to call, "decisions regarding whether and how to conduct cross examinations and what evidence to introduce are matters of trial strategy and tactics and are within the exclusive province of counsel after consultation with the client."[33] And such tactical decisions "provide no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen them."[34]

---

trial counsel's failure to call witnesses who would corroborate victims' later recantation of child molestation allegations was not ineffective assistance as testimony would have been cumulative of other evidence, and thus its omission did not prejudice defendant).

[32] The child-advocacy counselor who actually conducted the forensic interview of A. F. did not testify at trial.

[33] *Anderson v. State*, 350 Ga. App. 369, 379 (4) (a) (829 SE2d 453) (2019) (punctuation omitted).

[34] *Id.* (punctuation omitted).

Here, beyond not tailoring his cross-examination using the information provided by appellate counsel's retained psychologist and the subject documents, Gaspar-Mateo does not specify how trial counsel's cross-examination of the State's witnesses constituted deficient performance. And given our holding that Gaspar-Mateo failed to show his trial counsel rendered ineffective assistance by choosing not to retain an expert witness or subpoena certain documents, he has also failed to show that his trial counsel's cross-examination amounted to deficient performance.[35]

(d) *Failure to File a Demurrer as to Count 1 of the Indictment.* Finally, Gaspar-Mateo claims trial counsel provided ineffective assistance by failing to file a demurrer to Count 1 of the indictment which, as noted above, charged him with rape of a female less than ten years in age, reiterating his argument that this count was subject to the rule of lenity. But given our holding in Division 1, *supra*, that one of the alternative rape counts was vacated by operation of law as simply surplusage, we need not address this claim.

In any event, Gaspar-Mateo has failed to show his trial counsel rendered ineffective assistance in this regard either. Although his amended motion for new trial

---

[35] *See supra* notes 26 and 28 & accompanying text.

asserts that trial counsel performed deficiently by failing to file a demurrer as to Count 1 of the indictment, his appellate counsel never questioned trial counsel on this issue during the motion-for-new-trial hearing. In fact, the only mention of the rule of lenity during the hearing was in appellate counsel's prefatory remarks to the trial court outlining his agenda for the hearing. And in the absence of evidence to the contrary, trial counsel's decisions are "presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim."[36] So, this claim likewise lacks merit.

For all these reasons, we affirm Gaspar-Mateo's convictions, but we vacate his sentence because the trial court imposed a sentence on both rape convictions, and so we remand the case to the trial court for resentencing in a manner consistent with this opinion.

*Judgment affirmed in part, vacated in part, and case remanded. Mercier and Pipkin, JJ., concur.*

---

[36] *Howard v. State*, 340 Ga. App. 133, 142 (3) (c) (796 SE2d 757) (2017) (punctuation omitted); *accord Mitchell v. State*, 290 Ga. 490, 492 (4) (a) (722 SE2d 705) (2012).