**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 4, 2013**

# In the Court of Appeals of Georgia

A13A0900. BURGER v. THE STATE.

RAY, Judge.

A jury convicted Rafael Radcliffe Burger of six counts each of armed robbery (OCGA § 16-8-41 (a)), false imprisonment (OCGA § 16-5-41 (a)), and possession of a firearm during the commission of a felony (OCGA § 16-11-106 (b)). He appeals, contending that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that Burger and three other perpetrators robbed several victims in an apartment complex. Burger gained access to the victims' apartment by offering to bring a woman, Yasmein Spillman, to have sex with the victims. The perpetrators, armed with a rifle and a

pistol, bound the victims' hands and ankles, and hit or kicked them. Burger and the other perpetrators then took money, a television, DVD players, a suitcase, and cell phones. Some of these items were found pursuant to a search of the residence of some of the perpetrators who were with Burger.

A police detective who interviewed Burger testified that Burger told him he agreed to "set up a date" between Spillman and one of the victims, Juan Andrade, in exchange for money. The detective testified that Burger told him that when two of the other perpetrators, who were armed, came into the apartment, Burger initially got down on the ground and then got up and began helping the perpetrators search the victims and bind their hands and feet. Burger also admitted to holding a handgun while standing guard over the victims. Another police detective who also interviewed Burger testified that Burger told him he was present during the incident, that he knew of the robbery just before it occurred and before he entered the apartment, and that he received money from the other perpetrators.

Burger testified at trial that he was setting up a date for sex between Andrade and Spillman. He indicated that when another perpetrator entered with a gun, "I was looking at him like, what? . . . I was scared at that point. . . . I knew what was going on; they was robbing the place, but I didn't know if I was in any immediate danger

2

at that time because, like I said, they were my friends." He initially got down on the floor, but when one of the other perpetrators pointed a gun at him and told him to get up, he did. When a perpetrator told him to search the apartment, he did, locating cash and other items, including a gun and something that appeared to be cocaine. He gave these items to the other perpetrators. He admitted to holding a gun handed to him by one of the perpetrators and to guarding the victims. He then fled with the other perpetrators. He also testified that the other perpetrators later divided up the proceeds of the robbery and gave him a share.

The victims who testified at trial identified Burger as one of the assailants who participated in the armed robbery. Burger and three other perpetrators were charged with seven counts each of armed robbery, false imprisonment, and possession of a firearm during the commission of a felony. Burger was found guilty of six counts each of the aforementioned crimes and was acquitted of the remaining counts; his co-defendants pled guilty to all counts prior to trial.

On appeal, Burger contends that he received ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that his counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors,

the outcome of trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SCt. 2052, 80 LE2d 674) (1984). "The likelihood of a different result must be substantial, not just conceivable." (Citation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012). We are not required to address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either one of them, and "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, supra at 697 (IV). Further, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Hill*, supra.

1. Burger argues on appeal that Spillman told trial counsel in two interviews that he had no knowledge of any plan to commit armed robbery. However, at trial, Spillman testified that Burger knew about the robbery beforehand, told her that he was using her as "bait," helped another perpetrator tie up victims, held a weapon during the crime, fled with the other perpetrators, and split the money with them. Burger now contends that his trial counsel was ineffective because he did not take the steps necessary to impeach Spillman: he did not record or otherwise preserve his

4

interviews with her, nor did he make any provisions to have Burger represented by other counsel so that he could serve as an impeaching witness. Thus, Burger argues, his trial counsel was ineffective for not impeaching Spillman.

However, at the motion for new trial hearing, trial counsel only testified that he was surprised by Spillman's testimony because she had told him that *she* did not know about the robbery beforehand. Trial counsel never testified that Spillman told him that *Burger* did not know about the robbery beforehand.

Trial counsel's testimony would not provide a basis for impeaching Spillman as to whether or not *Burger* had prior knowledge of a planned robbery. Given this, and the overwhelming evidence of Burger's guilt as outlined above, Burger cannot show that he was prejudiced by trial counsel's failure to pursue a futile impeachment attempt. See *Taylor v. State*, 282 Ga. 693, 697 (2) (c) (653 SE2d 477) (2007) (defendant could not show prejudice from counsel's failure to impeach witness with prior inconsistent statement where there was no reasonable probability that the difference between witness' prior statement and in-court testimony would have altered the outcome of trial).

2. Burger also argues that trial counsel was ineffective because he failed to tender into evidence certified copies of the convictions of the other perpetrators,

5

which could have been used for impeachment. Burger cites to testimony from the perpetrators that the prosecutor who was examining them had not promised them a deal. Burger argues that copies of their plea agreements and certified convictions would have served to undermine their credibility and would have shown that they promised to "testify truthfully" as a condition of their sentences.

At trial, the perpetrators whose testimony Burger cites in his appellate brief testified on cross-examination as to the maximum sentences for their crimes and testified that they received mandatory minimum sentences. The defense attorney made the point that he was eliciting this testimony to show their motivation to testify for the State. Further, the perpetrators swore to tell the truth on the stand.

At the motion for new trial hearing, Burger tendered certified copies of the convictions of two of the perpetrators into evidence, showing that they received the mandatory minimum sentences to which they testified at trial. The convictions indicate the perpetrators entered negotiated pleas.

A better practice for trial counsel indeed may have been to tender certified copies of the convictions. However, the testimony elicited made the jury aware that the perpetrators had sworn to testify truthfully; that they were testifying for the State; that they had pled guilty; and that they had received mandatory minimum sentences

rather than the maximum sentences available. Given this, and given the overwhelming evidence of Burger's guilt (including his own testimony), he has failed to show that he was prejudiced by trial counsel's failure to tender the certified copies of the convictions into evidence. *Harrell v. State*, 253 Ga. App. 691, 698 (5) (b) (560 SE2d 295) (2002) (even though certified copies of convictions could have impeached a witness, any deficiency in counsel's failure to tender them did not prejudice defendant where jury already knew of the convictions, and where there was no reasonable probability of a different result at trial). See also *English v. State*, 290 Ga. App. 378, 383-384 (4) (659 SE2d 783) (2008) (counsel not ineffective for failing to impeach witness where that witness' testimony merely corroborated the trial testimony of a different witness). The trial court did not err when it denied Burger's motion for new trial on grounds of ineffective assistance of counsel.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*