**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 19, 2025**

# In the Court of Appeals of Georgia

A25A1461. HARDY v. THE STATE.

RICKMAN, Presiding Judge.

Following a jury trial, Abraham Hardy was convicted of numerous crimes stemming from his sexual abuse of a child victim. He argues on appeal that the evidence was insufficient to support the guilty verdict; the trial court erred by excluding evidence of an alleged sexual relationship between him and the victim's grandmother, limiting the scope of his voir dire examination of prospective jurors, and deviating from the standard jury charge on direct versus circumstantial evidence; and his trial counsel rendered ineffective assistance. For the following reasons, we find no reversible error and, therefore, affirm Hardy's convictions.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no

longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979).

(Citation and punctuation omitted.) *Laster v. State*, 340 Ga. App. 96, 97 (796 SE2d 484) (2017).

So construed, the evidence presented at trial showed that Hardy was a close friend of the victim's family who grew up with the victim's mother in Douglasville, Georgia and whom the victim referred to as "Uncle Abe." Although her family had moved, the victim often stayed with her grandmother in Douglasville during school breaks and summer vacations and, on those occasions, she would see Hardy.

In April 2015, when the victim was 12 years old and in the sixth grade, Hardy picked her up from her grandmother's house and took her to his home purportedly to watch a movie. At some point during the movie, Hardy asked if he could "get comfortable," after which he removed his pants and his underwear and began "jerking off." He proceeded to then touch and penetrate the victim's vagina. Before returning

the victim to her grandmother's home, Hardy made her promise to keep his abuse "a secret."

Over the next three and a half years, Hardy would retrieve the victim from her grandmother's house during her visits and subject her to various abuses. On one occasion, Hardy put a black leather collar and chain leash on the victim and walked her around like a dog before engaging in various sex acts with her. On another occasion, after taking the victim to an art show, Hardy took her to his home, pinned her naked body to the bed with leather wrist restraints and straps, and used various sex toys on her. On yet other visits, Hardy struck the victim on the backside with whips or a wooden paddle. Hardy both performed oral sex on and received oral sex from the victim.

In November 2018, when the victim was 15 years old and at her grandmother's house for Thanksgiving break, Hardy took her to breakfast and announced that he had recently gotten married. He then took the victim to his house and had sexual intercourse with her.

In January 2019, the victim went to her doctor for a physical and reported that she had been suffering from a loss of motivation and interest in the things she enjoyed,

was having trouble sleeping, and had been having thoughts of hurting herself. The doctor diagnosed her with moderately severe depression and prescribed her medication. During a follow-up visit with the doctor several weeks later, the victim disclosed Hardy's sexual abuse. With the doctor's encouragement, the victim also informed her parents, and law enforcement was contacted.

A forensic interview was subsequently conducted, during which the victim discussed in detail the sexual abuse. She also described certain sex toys that Hardy had used on her — a black collar and chain leash, a "wand" vibrator, a blue dildo, a gold anal plug, a short leather whip with "lots of little leather bits coming out of it," and a paddle with an anime character drawn on it. Some of these items she actually drew on a whiteboard during the interview. The victim also relayed seeing (and subsequently drew) a long black-and-white whip kept in Hardy's bedroom, mentioned a lavender zipper pouch, and identified by name a hentai[1] pornographic video shown to her by Hardy. Finally, the victim described some of Hardy's tattoos and disclosed that he was uncircumcised and had a genital piercing.

---

[1] Hentai is a type of pornography involving Japanese anime characters.

A search warrant was obtained for Hardy's home and during the search, law enforcement officers located and seized, among other things, a black collar and chain leash, leather wrist restraints, two vibrators stamped with the words "Magic Wand," a blue dildo, a gold anal plug, several "cat o'nine tail" whips,[2] a wooden paddle etched with a female in bondage, a black-and-white bull whip, a lavender zipper pouch filled with condoms, and the cover to the hentai pornographic video named by the victim. Hardy was arrested and a search warrant of his person was executed. Photographs were taken of tattoos matching those described by the victim, and it was confirmed that he was uncircumcised and had a genital piercing.

Hardy was indicted on three counts of aggravated child molestation, eight counts of child molestation, four counts of enticing a child for indecent purposes, and one count of statutory rape. During the ensuing trial, the victim testified to events consistent with those described above and identified the various sex toys seized from Hardy's home. The State also provided testimony from the victim's mother and grandmother, the victim's doctor to whom she made her initial outcry, and several law

---

[2] A "cat o'nine tail" whip is a short whip containing numerous leather tassels.

enforcement officers, including the forensic interviewer. Hardy presented several witnesses and testified in his own defense.

The jury convicted Hardy on all counts, and the trial court denied his subsequently filed motion for new trial. This appeal followed.

1. Contrary to Hardy's assertion otherwise, the evidence set forth above was sufficient for a reasonable juror to convict him on the crimes for which he was charged beyond a reasonable doubt. See OCGA §§ 16-6-4 (c) ("A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."); 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person . . . [d]oes an immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."); 16-6-5 (a) ("A person commits the offense of enticing a child for indecent purposes when he . . . takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts."); 16-6-3 (a) ("A person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse.").

Although Hardy claims that the victim's failure to mention his scars and/or alleged inconsistencies in her statements as to the exact location of his genital piercing[3] cast doubt on her credibility, it was for the jury, not this Court, to assess and weigh the testimony and the other evidence presented. See *McCurdy v. State*, 359 Ga. App. 885, 887 (1) (c) (860 SE2d 172) (2021) ("It is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient.") (citation and punctuation omitted). Likewise, we reject Hardy's assertion that testimony from his wife claiming ownership of the sex toys and/or testimony from her and his roommate purporting to establish alibi evidence for all relevant time periods of abuse spanning over three and a half years rendered the evidence against him insufficient. See *Gordon v. State*, 373 Ga. App. 592, 597 (1) (a) (908 SE2d 297) (2024) ("A defendant may choose to put forward evidence of alibi, but the jury may reject such evidence in favor of the State's proof of the indicted act[;] [t]his determination

---

[3] During the forensic interview, the victim stated that Hardy had a piercing in the foreskin of his penis in which he wore "a bar or a dumbell," and at trial she testified that he had a penis piercing and wore "a ring or half ring." When he was arrested, Hardy wore a ring in the base of his scrotum and nothing in his foreskin, although a receipt reflecting the purchase of dumbell-style jewelry was found amongst his belongings.

is simply a resolution of conflicting evidence, a traditional role of the jury.") (citation and punctuation omitted).

2. Hardy argues that the trial court erred by excluding evidence, seemingly undisputed in the record, that he was engaged in a sexual relationship with the victim's grandmother around the time that he was abusing the victim. He asserts that evidence of the relationship was fundamental to his defense.

Prior to trial, the State filed a motion in limine acknowledging the relationship and admitting its relevance to show motive and bias, but seeking to limit the scope of related testimony so as to exclude "extensive details" regarding its sexual nature. During a pretrial hearing on the motion, Hardy's counsel argued that he did not intend on going into "graphic details" about the relationship, but nevertheless expected there to be testimony that the victim may have gained knowledge of Hardy's sex toys because "some of these same items may also be in the grandmother's house." The trial court deferred ruling on the motion, directing Hardy's counsel to announce when he was ready to present the evidence and informing him he would be required to "make a proffer of exactly what you want to present and [identify] the witness [who is] going to present it" before the court ruled on its admissibility.

At trial, after the victim testified in detail about Hardy's abuse and the doctor testified about her outcry, the victim's mother took the stand. Hardy's counsel asked her on cross-examination if she was aware that Hardy had been engaged in a sexual relationship with her mother (the victim's grandmother). The witness "became extremely upset" and responded that she was not. Shortly thereafter, she was excused and trial was concluded for the day.

Once the jury left the courtroom, the trial judge addressed counsel. He recognized that the parties had agreed that the sexual relationship between Hardy and the grandmother could be mentioned as long as no details were discussed, but admonished counsel that he was "personally disgusted" by counsel's question of whether the victim's mother knew "about her mother having a sexual relationship with the person that she apparently believes molested her daughter." The judge expressed doubt that the evidence "would have any bearing in this case whatsoever other than to muddy the waters," but invited Hardy's counsel to return to court the following morning and present the court with case law to establish its admissibility.

The following morning, the trial judge recognized that he had become emotional the day before and "probably shouldn't have." The court then invited Hardy's counsel to demonstrate why the evidence at issue should be admitted.

Hardy's counsel explained the defense theory that, having admitted that she had access to her grandmother's Facebook Messenger, the victim learned the details of Hardy's tattoos and anatomy — such as his uncircumcised penis and pierced genitals — not because he had sexually abused her, but because she had viewed explicit messages exchanged between Hardy and the grandmother, who was a massage therapist. In support of this theory, Hardy proffered evidence of the following text message exchange:

[Grandmother]: Class in AZ was very enlightening.

[Hardy]: Oh?! [grinning face emoji]

. . .

[Grandmother]: Yes 8 different clients so different body types

[Grandmother]: I can't wait to tell you about it. Think you might find it interesting.

[Hardy]: Oh?! [smiling face with horns emoji] [smiling face with smiling eyes emoji]

[Grandmother]: I saw a penis pump!

[Grandmother]: In action too [face with tears of joy emoji]

According to Hardy, the above-quoted exchange "shows the explicit nature of the relationship" between Hardy and the victim's grandmother and went "strictly to [his] primary defense" that the victim knew intimate details about his anatomy through reading her grandmother's messages.

The trial court excluded any reference to a sexual relationship between them. In so doing, the court held that evidence of the relationship was irrelevant because any suggestion that the victim gained knowledge about Hardy's anatomy by viewing the grandmother's messages was "total speculation" without "the slightest bit of evidence" that any such information was contained in the messages. Further, even if the relationship evidence was relevant, the trial court excluded it "based upon the finding that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury."

Hardy contends that the trial court erred by excluding evidence of his sexual relationship with the victim's grandmother and by doing so, precluded him from

11

presenting his primary defense that the relationship explained how the victim had obtained such intimate details of his anatomy and sex life.

Evidence at trial may be admitted at the trial court's discretion. See *Murray v. State*, 219 Ga. App. 405, 406 (465 SE2d 515) (1995). "Although each party is entitled to a thorough and sifting cross-examination, that right is not unfettered." Id. The trial court's discretion includes the authority to restrict the scope of cross-examination to the relevant issues. See id.

Georgia law defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "Although this relevance standard is a liberal one, it is not meaningless or without boundaries." (Citation and punctuation omitted.) *Martinez-Arias v. State*, 313 Ga. 276, 285 (3) (869 SE2d 501) (2022). Evidence that fails to meet this standard "is not relevant and shall not be admissible." OCGA § 24-4-402.

But even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless

presentation of cumulative evidence." OCGA § 24-4-403. "The major function of [OCGA § 24-4-403] is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *McIver v. State*, 314 Ga. 109, 145 (3) (a) (875 SE2d 810) (2022). We will reverse the trial court's exclusion of evidence only upon a finding of abuse of discretion. See *Murray*, 219 Ga. App. at 406.

The trial court did not err in holding that evidence of the sexual relationship was irrelevant to the issue of whether Hardy sexually abused the victim. At no time during the trial or the motion for new trial did Hardy proffer any evidence in support of his theory of defense beyond the single reference in the proffered message to a penis pump — an object not mentioned by the victim. Nor did he proffer evidence that any of the items identified by the victim had been owned by the grandmother or kept at her house. Thus, the "penis pump" message was insufficient from which to draw the increasingly speculative inferences that Hardy and the grandmother shared not only a sexual relationship, but one in which they exchanged over text or social media messages containing the most intimate details of Hardy's anatomy, and further that the victim, who admitted to having used her grandmother's Facebook but denied

13

having memory of any specific messages, learned not only detailed information about Hardy's penis, but also learned specific details of his sex toy collection. As held by the trial court, Hardy failed to demonstrate a nexus between the victim's extensive personal knowledge and Hardy's relationship with the grandmother so as to render the latter relevant evidence. See OCGA § 24-4-402; *House v. State*, 236 Ga. App. 405, 410 (3) (512 SE2d 287) (1999) (affirming trial court's refusal to allow defendant to question child witness about the witness's own sexual abuse by third party in order to argue the victim learned about sex by witnessing such abuse); see also *McIver v. State*, 314 Ga. 109, 147 (3) (b) (875 SE2d 810) (2022) ("Without any additional evidence, the chain of inferences between the evidence in question and any legally relevant point is simply too long, dubious, and attenuated to allow the evidence to be introduced.") (citation and punctuation omitted); *Bill v. State*, 341 Ga. App. 340, 342 (1) (a) (799 SE2d 28) (2017), overruled in part on other grounds by *White v. State*, 305 Ga. 111 (823 SE2d 794) (2019) (affirming trial court's exclusion of evidence because its connection to the crime charged amounted to nothing more than "rank speculation").

Further, regardless of its relevancy, the trial court was fully authorized to exclude the evidence on the basis that its probative value was substantially outweighed

by the danger of unfair prejudice, confusion of the issues, and misleading the jury. See OCGA § 24-4-403; see generally *McIver*, 314 Ga. at 148, n.60 (3) (c). Cf. *Hughes v. State*, 297 Ga. App. 581, 585-586 (677 SE2d 674) (2009).

3. Hardy contends that the trial court erred by deviating from the pattern jury instruction when charging the jury on direct versus circumstantial evidence. Because he did not object at the time of trial, we review the charge for plain error. See OCGA § 17-8-58 (b) ("Failure to object [before the jury retires to deliberate] shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.").

Under the plain error analysis, Hardy must establish that there was legal error in the jury charge; that he did not affirmatively waive an objection to that error; that the error was clear or obvious, and not subject to reasonable dispute; and that the error affected his substantial rights, i.e., affected the outcome of the trial court proceedings. *Padilla-Garcia v. State*, 372 Ga. App. 9, 11–12 (1) (a) (903 SE2d 680) (2024). If Hardy satisfies each of those elements, this Court has the discretion to remedy the error if we determine that it seriously affected the fairness, integrity, or public reputation of judicial proceedings. See id.

After giving the pattern jury instructions on both direct[4] and circumstantial[5] evidence, the trial court charged the jury:

> Now, the definition of circumstantial evidence in my view is very difficult to understand. And what I like to do is give folks an example. So let's say that one of you comes home and you walked into the kitchen and you see Junior grabbed the cookie jar from the counter to get a cookie. And he gets the cookie and he sticks it in his mouth, but he drops the cookie jar on the floor and bursts it all over your nice, clean kitchen floor. Well, that's direct evidence because you saw it. You are an eyewitness to that event.
>
> Now, let's change the story. Let's say you come home and Junior's your only child and there's not supposed to be anyone else there and Junior is sitting in front of the cartoons watching Bugs Bunny. . . . [H]e's watching Bugs Bunny and he's chewing and there's like cookie crumbs on his chin and he looks at you, you know, like he's in trouble. And then you go in the kitchen and there's a cookie jar busted on the floor. That's circumstantial evidence because you didn't see him grab the cookie jar

---

[4] "Direct evidence is the testimony of a person who asserts they have actual knowledge of a fact. An example of that would be an eyewitness, someone who personally observed that fact." See Georgia Suggested Pattern Jury Instructions - Criminal 1.30.20.

[5] "Circumstantial evidence is proof of a set of facts and circumstances that tend to prove or disprove another fact by inference, that is by consistency with such fact or elimination of other facts." See id.

and bust it on the floor, but it's busted. *He looks guilty*. He's got cookie crumbs and he's chewing a cookie and he's the only one in the house.

That's the difference between direct and circumstantial evidence and there's no real difference legally because whether the evidence is direct or circumstantial, it has to be sufficient to eliminate and exclude all reasonable theories of innocence and prove the guilt of the defendant beyond a reasonable doubt.

Hardy asserts that in its example, the trial court misrepresented the applicable legal standard by suggesting the jury could infer guilt when a defendant "looks guilty." It is well established, however, that when assessing whether there was plain error, "jury charges cannot be viewed in isolation, . . . [but] must be read and considered as a whole." (Citation and punctuation omitted.) *Newsome v. State*, 355 Ga. App. 13, 17 (2) (842 SE2d 339 (2020).

In addition to charging the jury on direct and circumstantial evidence and giving the challenged example, the trial court instructed the jury that Hardy was presumed innocent until proven guilty; that the presumption of innocence remained unless the State overcame it with evidence of Hardy's guilt beyond a reasonable doubt; that Hardy could not be convicted unless every essential and material allegation of the

17

indictment and every essential element of the crimes charged was proven beyond a reasonable doubt; and that the burden of proving Hardy's guilt rested with the State. The trial court then read each individual charge of the indictment, set forth the material elements of each crime charged, and again explained that the State must prove every material element of each crime charged beyond a reasonable doubt. Considered as a whole, Hardy has failed to show the trial court's charge to the jury misrepresented the applicable legal standard. See OCGA § 17-8-58 (b); *Newsome*, 355 Ga. App. at 18 (2). We further note that Hardy testified in his own defense and, consequently, the jury was authorized to "consider his demeanor and conduct on the witness stand." *McIlwain v. State*, 264 Ga. 382, 383 (3) (445 SE2d 261) (1994).

4. Hardy argues the trial court erred by limiting the scope of voir dire. He contends that the limitation prevented him from assessing whether the prospective jurors harbored "bias surrounding the subject matter of this case."

Voir dire itself was not transcribed, but after the second panel of prospective jurors had been questioned and dismissed, the trial court addressed counsel on the record, noting that the jurors had been asked about body piercings, anime, and whether they had read the book 50 Shades of Grey. After recognizing that the purpose

of voir dire was to "ascertain the fairness and impartiality of the jurors" and determine their ability to be objective and free from bias or prior inclination, the trial court declared that the process was taking too long and the court was forbidding such questions going forward.

We begin by noting that a trial court has broad discretion to limit the questions that may be asked of prospective jurors during voir dire, that discretion "includes determining whether a question is permissible under OCGA § 15-12-133,"[6] and "the court's rulings are presumed proper in the absence of some manifest abuse of discretion." (Citation and punctuation omitted.) *See Alligood v. Piedmont Med. Care Corp.,* 369 Ga. App. 171, 172 (2) (892 SE2d 790) (2023).

Regardless, as noted by the trial court in its order denying Hardy's motion for new trial, the individuals ultimately chosen to serve on the jury were selected from the first two panels of prospective jurors who had been subjected to the questions about which the trial court later limited. It follows that Hardy cannot show harm from any

---

[6] "In [voir dire] examination, the counsel for either party shall have the right to inquire of the individual prospective jurors examined touching any matter or thing which would illustrate . . . any fact or circumstance indicating any inclination, leaning, or bias which the prospective juror might have respecting the subject matter of the action or the counsel or parties thereto, and the religious, social, and fraternal connections of the prospective juror." OCGA § 15-12-133.

alleged error. See *Newsome v. State*, 287 Ga. App. 356, 358 (651 SE2d 764) (2007) ("It is axiomatic that harm as well as error must be established by an appellant in order to secure a reversal of his conviction.").

5. Lastly, Hardy argues that his trial counsel rendered ineffective assistance in several respects. We will address each in turn.

To prevail on his claim of ineffective assistance of counsel, Hardy "must show both that his counsel's performance was deficient and that the deficient performance so prejudiced him that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different." (Citation and punctuation omitted.) *McNeil v. State*, 363 Ga. App. 548, 552 (3) (871 S.E.2d 303) (2022). The failure to satisfy either prong of the test is fatal to a claim of ineffective assistance. See id.

(a) Hardy asserts that his trial counsel's performance was deficient to the extent that counsel asked the victim's mother an inappropriate question that then led to the trial court's exclusion of evidence related to Hardy's relationship with the victim's grandmother. As discussed in Division 2 of this opinion, however, the subject evidence was not relevant and was properly excluded by the trial court. Consequently, nothing that counsel did or did not do would have rendered the evidence admissible,

20

and counsel was not deficient in this regard. See generally *Burger v. State*, 323 Ga. App. 787, 789 (1) (748 SE2d 462) (2013).

(b) Hardy contends that his trial counsel rendered ineffective assistance by failing to object to the trial court's jury instruction on direct versus circumstantial evidence. As discussed in Division 3 of this opinion, however, the trial court's charge to the jury, considered as a whole, was not erroneous and Hardy cannot show that his trial counsel's performance was deficient in failing to raise a objection. See generally *Stepp-McCommons v. State*, 309 Ga. 400, 407 (4) (a) (845 SE2d 643) (2020).

(c) Hardy asserts his trial counsel rendered ineffective assistance by failing to object when various sex toys that had been seized from his home, admitted into evidence, and discussed during the testimony of several witnesses were left on display in the courtroom. We need not consider the deficiency prong of this analysis, however, because given the overwhelming evidence of Hardy's guilt, he cannot establish that he was prejudiced by his counsel's failure to object to the display of the items. See generally *Harris v. State*, 359 Ga. App. 356, 361-362 (2) (b) (857 SE2d 815) (2021).

Accordingly, we affirm the trial court's order denying Hardy's motion for new trial.

*Judgment affirmed. Gobeil and Davis, JJ., concur.*